UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 3: 08-21-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LEONARD LAWSON, CHARLES WILLIAM NIGHBERT and BRIAN RUSSELL BILLINGS, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendants Leonard Lawson, Charles William Nighbert, and Brian Russell Billings' joint motion to strike surplusage from paragraphs 5, 6, 7, and 13 of Count 6 in the Indictment. [Record No. 87] For the reasons discussed below, the Court will grant the Defendants' motion.

**I.   Background**

In January 2008, the Office of the Inspector General ("OIG") of the Kentucky Transportation Cabinet ("KTC") commenced an investigation into allegations that the confidentiality of the KTC engineer estimates may have been compromised. The following month, the FBI, in conjunction with state authorities, began an investigation into the potential misapplication of the funds and property of a federally-funded state government agency involving many of the same allegations that the OIG had investigated. In early March 2008, James Rummage, an executive with the KTC, retained legal counsel and admitted to the FBI that

-1-

he had given KTC engineer estimates to Lawson at the direction of Nighbert and, in turn, received cash from Lawson. Beginning around March 12, 2008, Rummage began to cooperate with the FBI by providing information and recording conversations with persons who were subjects of the investigation.

On September 3, 2008, Defendants Lawson, Nighbert, and Billings were named in an eight-count Indictment for alleged violations of federal law relating to public corruption during Nighbert's tenure as Secretary of the KTC. Count 6 of the Indictment charges that all three defendants

> conspired with each other and others known and unknown to violate laws of the United States, that is, to attempt to corruptly persuade James Rummage with the intent to prevent the communication of information to law enforcement officers of the United States relating to the commission of Federal offenses, under 18 U.S.C. § 1512(b)(3), and to corruptly endeavor to influence, obstruct and impede the due administration of justice, under 18 U.S.C. § 1503, as more specifically described below, and in furtherance of the conspiracy, and in order to effect the objects thereof, the defendants committed one or more of the following overt acts:

[Record No. 1, p. 10] Count 6 continues for an additional 9 pages providing statements allegedly made between the Defendants and Rummage. Most of these statements were recorded by Rummage while he was cooperating with the FBI.

The Defendants claim that the alleged quotations provided in paragraphs 5, 6, 7 and 13 of Count 6 are prejudicial surplusage and should be stricken from the Indictment pursuant to FED. R. CRIM. P. 7(d). [Record No. 87, pp. 1–2] In response, the government argues that the use of a "speaking indictment" is common practice in public corruption cases and that the Indictment itself should not be amended to remove these quotations. [Record No. 140, pp. 1–2] However, the government concedes that these quotations should not be given to the jury during

deliberation, and has offered to provide a redacted version of the Indictment to be used during the jury deliberation. [*Id.*]

**II.     Analysis**

In general, the purpose of an indictment is to inform the defendant of the charges against him so that he can properly prepare to defend himself.  *See Russell v. United States*, 369 U.S. 749, 765 (1962); *United States v. Murphy*, 836 F.2d 248, 255 (6th Cir. 1988); *United States v. Baldinger*, 836 F.2d 176, 181 (6th Cir. 1988).  To accomplish this purpose, the indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . ."  FED. R. CRIM. P.  7(c).

Upon motion by a defendant, a district court may, in its discretion, strike portions of an indictment as surplusage.  FED. R. CRIM. P. 7(d); *Short v. United States*, 471 F.3d 686, 694 (6th Cir. 2006); *United States v. Emuegbunam*, 268 F.3d 377, 394 (6th Cir. 2001).  Rule 7(d) is properly invoked "when an indictment contains nonessential allegations that could prejudicially impress the jurors."  *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974).  However, "if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)."  *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993) (citation omitted).

In this case, the government contends that "speaking" indictments are commonly used in public corruption cases and that the present indictment is intended "to leave little doubt as to what conduct is alleged to violate the various statutes." [Record No. 140, p. 1] However, as the D.C. Circuit has noted,  "[d]espite the all too common use of "speaking" indictments, the

function of a federal indictment is to state concisely the essential facts constituting the offense, not how the government plans to go about proving them." *United States v. Edmond*, 924 F.2d 261, 269 (D.C. Cir. 1991). Since all indictments require the government to include sufficient information for the defendant to know the specific crimes that have been charged, any unnecessary language in a "speaking" indictment might be used for an unnecessary or improper purpose.[1]

Here, the Defendants contend that the quotations provided in paragraphs 5, 6, 7 and 13 of Count 6 have been taken out of context and selectively edited by the government. By doing this, the Defendants argue that the quotations provide serious misconceptions about what was discussed between Rummage and the Defendants. However, the Court need not determine whether the edited quotes are actually misleading, because that they are irrelevant and serve no purpose in the indictment. Accordingly, the Defendants' motion to strike will be granted, and the quotations in paragraphs 5, 6, 7 and 13 of Count 6 will be stricken from the Indictment as surplusage. The government is permitted to amend the Indictment to provide a concise summary of the essential facts regarding the conversations between Rummage and the Defendants.

### III.  Conclusion

---

[1]  *See* Alberto Bernabe-Riefkohl, *Silence is Golden: The New Illinois Rules of Attorney Extrajudicial Speech*, 33 LOY. U. CHI. L.J. 323, 373 (2002) (arguing that "prosecutors who want to conduct press conferences have developed the art of the 'speaking indictment' – that is, an indictment that effectively places 'in the public record' everything that the prosecutor would want to say in pretrial publicity in glorification of the case and in condemnation of the defendant"); Joanne Armstrong Brandwood, *Note: You Say "Fair Trial" and I Say "Free Press": British and American Approaches to Protecting Defendants' Rights in High Profile Trials*, 75 N.Y.U. L. REV. 1412, 1451 (2000) (arguing that "new regulations should prohibit so-called 'speaking indictments,' through which prosecutors evade no-comment rules by including highly prejudicial information in official court documents that are accessible to by the press").

It is hereby **ORDERED:**

(1) The Defendants' joint motion to strike [Record No. 87] shall be **GRANTED**;

(2) The quotations taken from conversations between Rummage and the Defendants contained in paragraphs 5, 6, 7 and 13 of Count 6 in the Indictment shall be stricken as surplusage.

(3) The government will have twenty (20) days to file an amended indictment which may include a concise description of the relevant alleged conversations between Rummage and the Defendants in place of the quotations that have been stricken.

This 8th day of January, 2009.

Signed By:
*Danny C. Reeves* DCR
United States District Judge