UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 3: 08-21-S-DCR |
| ) | |
| V. ) | |
| ) | |
| LEONARD LAWSON, CHARLES ) | |
| WILLIAM NIGHBERT and BRIAN ) | **MEMORANDUM OPINION** |
| RUSSELL BILLINGS, ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the Defendants' joint motion to transfer the case to Covington for trial or, in the alternative, to transfer it to another jury division. [Record No. 91] For the reasons discussed herein, the Court will grant the motion and scheduled the trial of this action in the Northern Division of the Court at Covington.

Defendants Leonard Lawson, Charles Nighbert, and Brian Billings allege that pretrial publicity and general public sentiment within the Frankfort jury division are so prejudicial as to deprive them of a fair and impartial jury. This case is currently set for trial in the Court's Central Division, at Frankfort, Kentucky. The case is the result of a year-long investigation into allegations that the Defendants conspired with others to leak engineering estimates and rig bids on state highway project contracts. At the time of the allegedly illegal activities, Defendant Billings was employed by a road construction company owned and operated by Defendant Lawson, while Defendant Nighbert served as Secretary of the Kentucky Transportation Cabinet ("KTC"). Because

of numerous factors including Lawson's and Nighbert's prominence in their respective fields, the case has received – and continues to receive – a great deal of attention from the media. Numerous newspapers, websites, and television stations published information about the case both before and after the Defendants were indicted in September 2008. [Record No. 91, Attach. 4] This attention continues even with minor and trivial matters. The Defendants contend that this statewide publicity, combined with the location of Frankfort as the state capital, predisposes the Frankfort jury division to a prejudicial view of the Defendants. The United States asserts that any prejudice stemming from the pretrial publicity can be addressed through the voir dire process, but recognizes that such a process may be extensive enough to warrant transfer. [Record No. 187]

As a general proposition, the Court notes that trial judges have wide discretion in ruling on motions for change of venue. *United States v. Lewis*, 504 F.2d 92, 97 (6th Cir. 1974) (citing *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 245 (1964)). "Transfer of a particular case from one place within the district to another place within the district is a matter for the local district judges to decide." *Lewis*, 504 F.2d at 98. This discretion is rooted in Federal Rule of Criminal Procedure 18 and this district's Local Criminal Rule 18.2(b). Both rules restate the traditional rule of *forum non conveniens* and vest the trial court with the authority to set the location of the trial based on convenience – for the court, defendant, and witnesses – and the interests of justice. FED R. CRIM. P. 18, E.D. KY. L. CR. R. 18.2(b).

Here, the Court's main focus is the interests of justice. More specifically, the Court is concerned with seating a jury untainted by prejudicial media reports. The Defendants argue that transfer is warranted because of extensive pretrial publicity within the Frankfort jury division. In support, they have tendered nearly 500 pages of newspaper, television, and internet coverage of the

case, generated mainly in August and early September 2008. [Record No. 94] Specifically, the Defendants assert that the publicity in Frankfort – even more than the publicity in other areas of the state – has been biased against the interests of the Defendants. Articles in the local Frankfort newspaper extensively quoted the Indictment, which contained lengthy conversations between the Defendants and others. These articles and television programs also referenced an earlier state employee hiring controversy in which Nighbert had been implicated, along with comments from current Governor Steve Beshear regarding the "misguided leadership," cronyism, and corruption in the state transportation department. [Record No. 94, Ex. 2]

Under such circumstances, the Supreme Court recognizes two types of jury prejudice: "(1) presumed prejudice, whereby the setting of the trial is inherently prejudicial, and (2) actual prejudice, whereby voir dire is inadequate to offset extensive and biased media coverage." *Robinson v. Gundy*, 174 F. App'x 886, 890 (6th Cir. 2006) (unpublished) (citing *Ritchie v. Rogers*, 313 F.3d 948, 952 (6th Cir. 2002)). The requisite prejudice must create a trial atmosphere that is circus-like or "utterly corrupted by press coverage." *Ritchie*, 313 F.3d at 952. These standards are stringent and difficult to meet because they are used to determine whether prejudice has reached the level of constitutional violation. And although the Court is unprepared to conclude that pretrial publicity in this case constitutes press corruption or has created a circus-like atmosphere, it has certainly been extensive and concentrated within the Frankfort jury division. As noted previously, many of the articles and programs referenced by the Defendants were published or produced in barely one month surrounding the Defendants' indictment.

In addition, Frankfort itself is an especially receptive audience for extensive media coverage of this particular type of case. As the state capital and corresponding location of the KTC and most

of the state government's offices, Frankfort is populated with a high percentage of state government employees. Forty-seven percent of the workers in Franklin County are employed by state or local government, as opposed to the twelve percent in Kenton County (the County in which Covington is located.)[1] Because Franklin County is the largest county by population of those counties constituting the Frankfort jury pool, state employees and/or their family members will likely constitute a large percentage of possible jurors if this case is not transferred. In addition, Nighbert's position with the previous Governor Fletcher's administration, and his alleged involvement in an employee hiring controversy, were all geographically centered in Frankfort. In the context of seating a jury in Frankfort this case, the manner in which newspapers and other news outlets reported on these other incidents are of great concern to the Court.

Finally, the United States neither disputes the extensiveness of the pretrial publicity to which the Frankfort jury division has been exposed, nor alleges inconvenience on the part of any witnesses or parties. In light of these facts, and in the interests of ensuring that the Defendants are afforded a fair trial, the Court will transfer the trial of this matter from Frankfort to Covington. Accordingly, it is hereby

**ORDERED** that the Defendants' motion to change venue for purposes of trial [Record No. 91] is **GRANTED**. The trial of this action will be transferred to the Northern Division of the Court at Covington, Kentucky.

This 2nd day of March, 2009.



Signed By:
*Danny C. Reeves* DCR
United States District Judge

---

[1] This statistic is based on a 2007 database maintained by the Kentucky Cabinet for Economic Development. Employment: Kentucky County Nonagricultural by Industry, *available at* http://www.thinkkentucky.com/EDIS/Deskbook/files/NonAgEmpCty.PDF.