UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CASE NO. 3:08-CR-21-DCR

UNITED STATES OF AMERICA,                                                                           PLAINTIFF

V.  **MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

LEONARD V. LAWSON,                                                                                    DEFENDANTS
CHARLES WILLIAM "BILL" NIGHBERT,
BRIAN RUSSELL BILLINGS.

\* \* \* \* \* \* \* \* \*

# I. INTRODUCTION

On December 3, 2008, defendant Leonard Lawson filed a motion to exclude *in limine* the government's proffered expert witness pursuant to Federal Rules of Evidence 702 and 403, as well as Federal Rule of Criminal Procedure 16(a)(1)(G). [DE #128]. On December 17, 2008, the United States filed a response to the motion. [DE #173]. On January 6, 2009 the defendant filed a reply to respondent's response. [DE #201]. Thus, this matter is ripe for review.

In accordance with local practice, this matter was referred to the undersigned Magistrate Judge for consideration pursuant to 28 U.S.C. § 636(b).

# II. DISCUSSION

**A. Factual and Procedural History**

On September 3, 2008, a federal Grand Jury returned an eight-count indictment against movant and his co-defendants, charging movant with bribery, witness tampering,

and obstruction of justice. Movant pled not guilty to these charges. Trial is scheduled to begin on June 23, 2009.

On September 3, 2008 defendant Lawson's counsel requested by letter that the United States disclose any items that it intends to use under Federal Rules of Evidence 702, 703, 705, or Federal Rule of Criminal Procedure 16(a)(1)(G). The letter also requested that the United States disclose information called for under Fed.R.Crim. Proc. 16(a)(1) generally, and FRE 801(d)(2)(E) or FRE 404(b) in particular.

On November 3, 2008 the government responded to defendant's letter with notification that the United States intends to call a witness with "specialized knowledge" to testify. The letter included the conclusions to which the witness would testify, the reasons for the witness's conclusions, and the witness's résumé.

On November 6, 2008 defendant Lawson's counsel replied to the government stating that the government's letter of November 3, 2008 did not include a summary of the bases and reasons upon which the expert witness relies, one of Rule 16(a)(1)(G)'s requirements.

On December 3, 2008 defendant Lawson filed his *First Motion to Exclude in Limine Government's Expert Witness*.

**B. Movant's claims**

In support of the motion to exclude the government's expert witness, movant asserts that: (1) the government's proffered witness lacks the qualifications to be admitted as an expert under Fed. Rule Evid. 702; (2) expert testimony will not assist and is not necessary for the jury to understand the movant's interest in the corporation whose

documents the expert would analyze and thus fails the "need" element of Fed. Rule Evid. 702; (3) the proffered testimony's relevance is for the jury to decide; (4) the expert's proffered opinion invades the province of the jury because it introduces state of mind testimony; (5) the expert's testimony would have a prejudicial effect that outweighs its probative value under Fed. Rule Evid. 403; and (6) the government provided insufficient notice under Federal Rule of Criminal Procedure 16(a)(1)(G) because the notice did not include the "bases and reasons" for the proffered expert's opinion testimony.

The United States filed a *Response to Motion to Exclude Expert Testimony* which stated the following: (1) there is a need for an expert witness because some of the evidentiary documents are not within the knowledge and understanding of many jurors; (2) the government might not call the expert, but must be prepared to impeach witnesses who testify at odds with the evidentiary documents; (3) the proffered witness is qualified to be an expert by her experience, education, and training because of her extensive auditing experience; and (4) the government will not ask the expert the thoughts of others.

The movant replied with a *Reply Memorandum in Support of First Motion to Exclude in Limine Government's Expert Witness* and stated: (1) expert testimony will not assist the jury because the evidentiary documents are not complex enough to merit expert assistance; (2) the government's need for someone to provide their desired testimony is not a proper basis for the admission of expert testimony; (3) the proposed use of expert testimony is an attempt to introduce state of mind testimony; and (4) the government provided insufficient notice under Federal Rule of Criminal Procedure 16(a)(1)(G) because "bases and reasons" for the proffered testimony were not provided.

**C. Applicable Law**

The movant challenges the government's proffered witness in two areas: the substantive rules regarding expert qualification under the Federal Rules of Evidence and related caselaw, as well as the procedural requirements of the Federal Rules of Criminal Procedure.

In considering the movant's claims, the court must consider Federal Rules of Evidence 104(a), 401, and 402. It is the court's duty to independently analyze the available information regarding the qualification of a witness. Fed. Rule Evid. 104(a). All relevant evidence is admissible. Fed. Rule Evid. 402.

***Expert testimony admissibility.*** The admissibility of expert testimony is governed by Federal Rules of Evidence 104(a), 401, and 702. There is also governing caselaw to consider from *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

FRE 104(a) states: "Preliminary questions concerning the qualification of a person to be a witness . . . shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges."

FRE 401 states that admissible evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence."

FRE 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness

qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  This rule presents six elements to be satisfied:  (I) the need to help the jury to understand evidence or to determine a fact in issue,
(ii) the need for scientific, technical, or other specialized knowledge regarding evidence or a fact in issue, (iii) presented by a witness qualified as an expert by knowledge, skill, experience, training or education, (iv) the witness's testimony is based on sufficient facts or data, (v) the witness employs reliable principles and methods in reaching his or her conclusions, and (vi) the witness reliably applied the principles and methods to the facts.

FRE 702 was amended in 2000, in light of the *Daubert* and *Kumho Tire* opinions from the Supreme Court of the United States.  *Daubert* held that Rules 104(a) and 702 set gatekeeping requirements for trial judges, a function that requires the court to determine the reliability of the scientific, technical or specialized knowledge undergirding the proffered expert's testimony.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993).  The Court identified the following factors as helpful in performing a reliability analysis:  (I) whether a particular theory or technique has been tested; (ii) "whether the theory or technique has been subjected to peer review and publication," (iii) the known or potential rate of error for the theory or technique,
(iv) the existence of standards in applying the theory or technique, and (v) whether the theory or technique enjoys "general acceptance" within the scientific community. *Daubert*, 509 U.S. at 593-94.  The particulars of the *Daubert* case applied to scientific

5

testimony regarding pharmaceutical research and, as such, the analytical factors suggested by the court focus on scientific testimony and information. *Daubert* does not speak directly to "technical" or "specialized knowledge" testimony that is also within the purview of FRE 702.

*Kumho Tire* addressed "technical" and "specialized knowledge" in light of *Daubert*. It held that the *Daubert* reliability analysis applies to all expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). The objective of examining the reliability of expert testimony is to ensure that every expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. The court may enquire into the methodology used to reach the conclusions presented in the testimony and apply the *Daubert* factors to the extent that they are helpful. *Kumho Tire*, 526 U.S. at 151. The trial judge has broad latitude in testing an expert's reliability, subject to an abuse of discretion standard. *Kumho Tire*, 526 U.S. at 152.

Auditors are an example of "specialized knowledge" expert. The foundations for their expert testimony do not fall into "scientific" or "technical" categories. Auditors are methodical and have standards for their profession, but they do not "test" their methodologies in the manner than laboratory scientists do, nor do they work with "technical" specifications as engineers or computer scientists do. The nature of their work makes application of the *Daubert* factors awkward.

Despite such analytical awkwardness, the accrual of specialized knowledge through experience is sufficient to create expertise. *Berry v. City of Detroit*, 25 F.3d 1342, 1349-50 (6th Cir. 1994). So long as the testimony content is relevant and the

method by which the specialized testimony developed is reliable, a specialized knowledge witness is an expert witness. *Id.* at 1351. Reliability in specialized knowledge testimony is indicated by testing the theory or technique and applying any other relevant *Daubert* factors. *Id.* at 1350. Courts err when they permit witnesses with specialized knowledge to testify as lay witnesses. When a witness presents information that is outside the working knowledge of an average lay person, then the need for an expert exists. *U.S. v. White*, 492 F.3d 380, 403 (6th Cir. 2007).

Audit experts rely upon their practical experiences that are relevant to a matter at issue. Their credentials are not their only relevant background. Auditors can be experts even when they are not CPAs. *U.S. v. Winkle*, 477 F.3d 407, 416 (6th Cir. 2007). An auditor with many years of practical experience in performing audit work relevant to the issue being litigated qualifies to be a witness so long as the methods employed are reliable. *Id.* at 415-16.

In the Eastern District of Kentucky, a range of relevant factors have been identified regarding the qualification of specialized knowledge experts. Relevant factors include the proffered expert's knowledge of an industry and knowledge of an industry's common practices, in addition to the expert's demonstrated relevant experience, training, and education. *Oaks v. Wiley Sanders Truck Lines, Inc.*, 2008 WL 4180267, at *3 (E.D.Ky. 2008). Scientific tests or the application of mathematical formulas are not a necessary foundation for expert testimony that is technical or based on specialized knowledge. *In re Air Crash at Lexington, Kentucky*, 2008 WL 2954973, at *3 (E.D.Ky. 2008).

***Expert testimony disclosures in federal criminal trials.*** The government's

required disclosures regarding expert testimony when prosecuting a federal crime is governed by Federal Rule of Criminal Procedure 16(a)(1)(G), which states: "At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . . The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."

**E. Analysis**

**1. Qualifications of the government's proffered witness under Fed. Rule Evid. 702.**

Movant contends that the proffered witness isn't properly qualified because she lacks the knowledge, training, and experience necessary to render opinions on "corporate and financial implications of documents related to UMG; conclusions regarding the nature and extent of Lawson's ownership interests in UMG; and/or attempts to conceal Lawson's ownership interests in UMG." *Defendant's Memo in Support of First Motion*, at 4. Additionally, defendant claims that the proffered witness lacks knowledge, training, and experience because she is not a Certified Public Accountant, "she has not focused upon or specialized in the area of partnership structures and/or partnership distributions," and her audit work does not "provide a background sufficient . . . to testify regarding the implications of corporate and financial documents." *Defendant's Memo in Support of First Motion*, at 5. Defendant also argues that the proffered expert's experience "performing audits under the International Fuel Tax Agreement and auditing trucking companies for compliance with the State Weight Distance Fuel Tax provides no relevant

knowledge base whatsoever for her purported testimony in this matter." *Defendant's Memo in Support of First Motion*, at 5.  The defendant goes on to state that the government did not provide any information regarding the proffered expert's basis for her conclusions and opinions, and as such, makes it impossible to determine whether the proposed testimony is reliable and relevant, prerequisites to qualifying an expert witness. *Defendant's Memo in Support of First Motion*, at 5-6.

It is an auditor's job to analyze the implications of corporate and financial documents.  The proffered witness has ten years of experience auditing financial documents, keeps up with continuing professional education, and has an appropriate educational background for auditing.  *Defendant's First Motion to Exclude*, Attachment B.  It is not necessary to be a CPA in order to be an audit expert.  *Winkle*, 477 F.3d at 416.  Rule 702 only requires expertise acquired by "knowledge, skill, experience, training or education."  The proffered expert's résumé demonstrates education, training, and experience.  It is not necessary to specialize in partnership structures or distributions to understand what business documents regarding partnerships intend to effectuate.  The scope of inquiry concerns the consequences of business structures and distributions; the fact that these are partnership structures and distributions is not relevant.

The International Fuel Tax Agreement audit experience is from more than ten years ago according to the proffered expert's résumé.  *Defendant's First Motion to Exclude*, Attachment B. Since 1999, the proffered expert has worked on auditing financial documents.  Financial and business documents are the foundation for the expert's analysis and their contents are relevant to the ultimate matters at hand.

The basis for the proffered expert's conclusions and opinions includes the

9

expert's knowledge and experience as documented in her résumé as well as the business documents disclosed with the government's *Response to the Motion to Exclude*. This makes it possible to determine that the testimony is relevant (because it is probative of the allegations against defendant) and reliable (because professional auditors examine documents for evidence of fraud based on professional audit standards). Although the government did not provide this information with its letter of November 3, 2008, the "bases" information is now in defendant's hands because the documents were appended to the government's *Response*.

Defendant goes on to argue that even if the witness is "properly qualified," expert testimony is not necessary for and will not assist the jury in understanding defendant's interest in the corporation whose documents the expert would analyze. Defendant alleges that the conclusions disclosed by the government do not require specialized knowledge to understand, that the government has the burden of demonstrating that specialized knowledge is helpful to the jury, and that they have not done so. *Defendant's Memo in Support of First Motion*, at 10. Defendant claims that the government has not given a reason why the jury could not review and understand the documents on their own and that it is the government's burden to demonstrate "by a preponderance of the evidence that the proposed testimony is justified under *Daubert*." *Defendant's Memo in Support of First Motion* at 10, citing *Oaks v. Wiley Sanders*, 2008 WL 418027, at *3 (E.D.Ky. 2008)(citing *Daubert*, 409 U.S. at 593). Defendant also states that the government's need for expert testimony is based on its desire to impeach witnesses and that the government's need for "someone to provide the desired testimony is simply not a proper basis for invoking expert witness testimony." *Defendant's Reply Memorandum*, at 3-4

(emphasis in original).

The Court has the duty of weighing the admissibility of evidence and the need for expert testimony under Federal Rules of Evidence 104(a), 401 and 702. The conclusions disclosed by the United States are supported by evidence consisting of business documents and records. This evidence is lengthy and complex. It will help the jury to understand the documents if someone with specialized knowledge explains the relevant portions of the documents.

It is also the Court's duty under FRE 104(a) and 702 to act as a gatekeeper and independently weigh the need for and validity of expert testimony. *Daubert*, 509 U.S. at 592-93. The government has demonstrated a need for the specialized knowledge by identifying that "some of the documents are not within the purview of knowledge and understanding of many jurors." *Government's Response to Motion*, at 3. This does not mean that the jury cannot review the documents on their own, but it does sufficiently raise the issue of whether the jurors could analyze the documents on their own based on their lack of working knowledge regarding business financial and legal documents. *White*, 492 F.3d at 403. There is no preponderance of the evidence standard under *Daubert* necessary to justify the proposed testimony. The caselaw to which defendant cites does not support that proposition and the citation to *Daubert* referred to in defendant's memorandum does not exist in *Oaks v. Wiley Sanders*. The government has provided sufficient information to satisfy FRE 702 and those are the only requirements that the government need meet regarding need for and validity of expert testimony.

Next, defendant argues that testimony regarding defendant's "apparent attempts to conceal" ownership of the corporation wouldn't assist the jury and so isn't appropriate

11

subject matter for expert testimony. *Defendant's First Motion to Exclude*, at 2. Defendant argues that the proffered expert cannot testify that the defendant's ownership interest in UMG constitutes apparent attempts to conceal his identity from public view because "if such evidence is relevant, the decision is the jury's." *Defendant's Memo in Support of First Motion* at 12.

It is the jury's role to weigh the evidence regarding the ultimate issues litigated. That is, it is the jury's responsibility to find the ultimate facts. It is the Court's decision under Federal Rules of Evidence 104(a) and 401 whether evidence is relevant and therefore admissible. The conclusion that "the defendant attempted to conceal his identify from public view" is an opinion that can be presented by an expert qualified under FRE 702. The jury may then weigh the evidence in its deliberations regarding the ultimate facts.

Defendant also argues that testimony regarding Lawson's apparent attempts to conceal ownership of the corporation would invade the province of the jury and so isn't appropriate subject matter for expert testimony. "[C]onclusory statements or an opinion as to the defendant's state of mind is not proper subject matter for expert testimony because it would not be of assistance to the jury." *Defendant's Memo in Support of First Motion*, at 13. Defendant claims that the way in which the government proposes to use the expert testimony is an attempt to introduce state of mind testimony. *Defendant's Reply Memorandum*, at 7-8. "Any proffered conclusions suggesting wrongdoing based on the nonpublic status of certain business records would be based on faulty logic and would prove nothing of relevance in this case." *Defendant's Memo in Support of First Motion*, at 14.

The government sufficiently addressed this concern in its *Response* to the defendant's motion to exclude. The government stated that it will not seek to elicit state of mind testimony. *Government's Response to Motion*, at 5. Additionally, the trial judge will respond to any attempt to elicit state of mind testimony upon the objection of defendant's counsel. The allegation of "faulty logic" is an argument to be made to the jury. The proffered expert testimony is probative of the merits of this litigation and admissible under FRE 702; if the logic underlying the government's use of this testimony is faulty, counsel will have the opportunity to address that issue in arguments at trial.

The Magistrate Judge concludes that the movant has not established that the proffered expert lacks the knowledge, skill, or education to qualify as an expert witness. The court's review of the proffered expert's background finds that the proffered expert possesses the experience, training, and education to qualify as an expert under FRE 702. The proffered expert's testimony is relevant to the issues being litigated because it is probative of whether defendant had the mechanisms in place to commit the acts with which he is charged. The proffered expert testimony will assist the jury in understanding facts at issue because it distills the relevant portions of the business financial and legal documents. The proffered expert has the education, training, and experience necessary to analyze the documents based on her educational background, accumulated years of professional experience, and ongoing training as an auditor. The factual basis for the expert's conclusions, consisting of business documents, is sufficient. The witness relies upon the auditing standards of her profession in reaching her conclusions and those standards are generally considered reliable. It appears that the witness has reliably applied auditing standards to the business documents because the conclusions disclosed

in the government's November 3, 2008 letter are easily found when reviewing the business documents.  The proffered expert testimony meets the requirements of Rules 401 and 702 and is therefore admissible.  Consequently, the Magistrate Judge concludes that the movant is not entitled to exclude the government's proffered witness on these grounds.

### 2.  The proffered testimony has a prejudicial effect that outweighs its probative value under Fed. R. Evid. 403.

Defendant argues that the prejudicial effect of the proposed expert's testimony outweighs its probative value and fails the test of Federal Rule of Evidence 403. *Defendant's First Motion to Exclude*, at 3.  Defendant does not support this assertion by identifying any prejudicial effects or by analyzing how the testimony's probative value is less weighty than its prejudicial effect.  Since the proffered expert's testimony regards evidentiary documents and conclusions that are relevant to the charges being litigated, the only prejudicial effect that might occur is convincing the jurors that defendant committed the crimes of which he is accused.  FRE 403 states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."  It does not create unfair prejudice to allow presentation of evidence probative of whether the defendant committed the acts of which he is accused.  The proffered expert testimony does not fail the test of Rule 403.

The Magistrate Judge concludes that the movant has not established that the proffered expert testimony creates unfair prejudice that outweighs the probative value of the testimony.  Consequently, the Magistrate Judge concludes that the movant is not entitled to exclude the proffered expert on these grounds.

**3. The government provided insufficient notice under Fed. R. Crim. P. 16(a)(1)(G).**

Defendant argues that the government's letter of November 3, 2008 is "insufficient notice under Federal Rule of Criminal Procedures 16(a)(1)(G)." *Defendant's First Motion to Exclude*, at 2. Defendant claims that the government has provided insufficient notice because it has failed to provide "the requisite bases and reasons for the proffered opinions." *Defendant's Reply Memorandum*, at 9. Defendant supports this argument with the case of *U.S. v. Davis*, which presents an example of inadequate disclosure under Fed. R. Crim. P. 16(a)(1)(G) where the government's disclosure did not provide the other side with enough information. The disclosed information was insufficient because, if the defense hired its own expert, "he or she would not have been able to analyze the steps that led the government's [experts] to their conclusions." *U.S. v. Davis*, 514 F.3d 596, 613 (6th Cir. 2008).

In the case cited by defendant, the material being analyzed was cocaine base. *Davis*, 514 F.3d at 600. The material not disclosed by the government consisted of the chemist notes regarding the testing of the contraband confiscated from the defendant. *Davis*, 514 F.3d at 613. The case at bar is easily distinguished from the scenario presented in *Davis*. Presumably, in *Davis* the government could not turn over to the defense the cocaine base that was tested because of its status as contraband that is illegal to possess. The chemist notes at issue were the material describing the process by which the chemist produced the report declaring that the substance tested was cocaine base. Since defense counsel could not obtain the cocaine base itself, it should have been able to see the next best thing: the notes linking the physical evidence to the report declaring the

15

substance to be cocaine base.  In the case at bar, the government disclosed with its *Response to Motion to Exclude* all of the source data used by the proffered witness in reaching her conclusions.  Defendant now possesses the data providing the "bases" for the proffered expert's conclusions.  If defendant chooses to hire an expert of his own, that expert will be "able to analyze the steps that led the government's [expert] to [her] conclusions."  *Davis*, 514 F.3d at 613.  Defendant already possesses the "reasons" for the proffered expert's opinion because those reasons were disclosed in the government's letter of November 3, 2008.

The Magistrate Judge concludes that the movant has not established that the terms of Federal Rule of Criminal Procedure 16(a)(1)(G) have not been met.  Consequently, the Magistrate Judge concludes that the movant is not entitled to further Rule 16(a)(1)(G) disclosure or a hearing on the qualifications or methodologies of the government's proffered witness.

In summary, the government's proffered expert testimony meets the requirements of Federal Rules of Evidence 401 and 702 based on the court's preliminary analysis required by FRE 104(a).  In addition, the government has disclosed all of the information required by Federal Rule of Criminal Procedure 16(a)(1)(G).

### III.  CONCLUSION

Based on a review of the record and the applicable law governing motions filed pursuant to Federal Rules of Evidence 702, 403, and Federal Rule of Criminal Procedure 16(a)(1)(G), for the reasons previously stated, the Magistrate Judge concludes that the defendant's motion should not be granted.

Accordingly, **IT IS RECOMMENDED** that the motion to exclude the government's expert witness be **DENIED** [DE #128] and that the request for alternative relief consisting of a perfected 16(a)(1)(G) disclosure and a witness qualification hearing also be **DENIED**.

The Clerk of the Court shall forward a copy of the Proposed Findings of Fact and Recommendation to the respective parties who shall, within ten (10) days of receipt thereof, serve and file timely written objections to the Magistrate Judge's Proposed Findings of Fact and Recommendation with the District Court or else waive the right to raise objections in the Court of Appeals. 28 U.S.C. § 636(b)(1)(B); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985); *Wright v. Holbrook*, 794 F.2d 1152, 1154-55 (6th Cir. 1986); Fed.R.Civ.P. 6(e). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof. Fed.R.Civ.P. 72(b).

This 13th day of April, 2009.

Signed By:
*James B. Todd*
United States Magistrate Judge