UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT

CRIMINAL ACTION NO. 08-21-S-DCR

UNITED STATES OF AMERICA                                                                                  PLAINTIFF

V.                              MAGISTRATE JUDGE'S
                          REPORT AND RECOMMENDATION

LEONARD V. LAWSON,
CHARLES WILLIAM NIGHBERT, and
BRIAN RUSSELL BILLINGS                                                                                 DEFENDANTS

\*\* \*\* \*\* \*\* \*\* \*\* \*\*

## I. INTRODUCTION

On February 11, 2009, a federal grand jury returned an eight-count superceding indictment against co-defendants Leonard V. Lawson ("Lawson"), Charles William Nighbert ("Nighbert"), and Brian Russell Billings ("Billings"), charging them with various offenses concerning the Kentucky Transportation Cabinet's awarding of state contracts to private entities for the construction or repair of state roads and highways in the Commonwealth of Kentucky.

Count 1 thereof charges that from June 2006 until March 2008, defendants Nighbert and Lawson conspired together with James Rummage, and with others, known and unknown, to violate laws of the United States, that is, 18 U.S.C. §§ 666(a)(l)(A) and (B) and (2), by (a) in a twelve month period, stealing, obtaining by fraud, and converting to the use of a person other than the rightful owner, property within the care, custody, and control of the Kentucky Transportation Cabinet ("KTC"), valued at more than $5,000, that is, the funds for payment on various road contracts, and the engineer's estimates for those contracts; and (b) corruptly giving to, and receiving by, employees of the KTC, money, with the intent to influence and reward the employees in connection with business transactions of the KTC, all in violation of 18 U.S.C. § 371.

Count 2 thereof charges that in the period of twelve consecutive months between July 1, 2006 and July 1, 2007, at Franklin County and Fayette County, defendant Nighbert, aided and abetted by James Rummage and others, known and unknown, being an employee and agent of a state government agency that received more than $10,000 of federal funds in a twelve-month period did steal, obtain by fraud, and without authority, convert to the use of a person other than the rightful owner, property in the care, custody, and control of that agency, that is, the funds to pay road contracts and the engineer's estimates for those contracts, in an amount in excess of $5,000, in that he caused to be provided to a bidder on road contracts confidential information that could compromise the bidding process and artificially increase the amount of the contract, all in violation of 18 U.S.C. § 666(a)(l)(A) and 18 U.S.C. § 2.

Count 3 thereof charges that between June 2006 and August 2007, in Fayette County in the Eastern District of Kentucky, defendant Lawson did corruptly give to James Rummage, an agent of State government, $20,000 with the intent to influence and reward James Rummage in connection with business, transactions, and a series of transactions of the KTC, involving road contracts and engineers' estimates of value in excess of $5,000, in that he gave money to James Rummage in connection with the acts of providing confidential KTC engineer estimates for road contracts to Lawson, all in violation of 18 U.S.C. § 666(a)(2).

Count 4 thereof charges that between January and April, 2008 in Fayette County, in the Eastern District of Kentucky, Lawson did corruptly give to Nighbert, an agent of State government, $67,251 with the intent to reward Nighbert in connection with business, transactions, and a series of transactions of the KTC, involving road contracts and engineers' estimates of value in excess of $5,000, in that he gave money to Nighbert in consideration of the acts of providing confidential KTC engineer estimates on road contracts to Lawson, all in violation of 18 U.S.C. § 666(a)(2).

Count 5 charges that sometime between June 2006 and August 2007 in Franklin County, Fayette County, and other places in the Eastern District of Kentucky, defendant Nighbert, being an

agent of state government, did corruptly agree to accept, and did accept between January and April, 2008, money from Lawson, with the intent to be rewarded in connection with business, transactions, and a series of transactions of the KTC, involving road contracts and engineers' estimates of value in excess of $5,000, in that he accepted money in consideration of the acts of providing confidential KTC engineer estimates on road contracts to Lawson, all in violation of 18 U.S.C. § 666(a)(l)(B).

Count 6 charges that from on or about a date in January 2008, until a date in April 2008, at Franklin County, Fayette County, Rowan County and other places in the Eastern District of Kentucky, defendants Lawson, Billings, and Nighbert conspired with each other and others, known and unknown, to violate laws of the United States, that is: to attempt to corruptly persuade James Rummage with the intent to prevent the communication of information to a law enforcement officer of the United States relating to the commission of a Federal offense, under 18 U.S.C. § 1512(b)(3), and to corruptly endeavor to influence, obstruct and impede the due administration of justice, under 18 U.S.C. § 1503, as detailed in the various overt acts contained in the indictment, all in violation of 18 U.S.C. § 371.

Count 7 charges that from on or about a date in January 2008, until on or about a date in April 2008, at Franklin County, Fayette County, Rowan County and other places in the Eastern District of Kentucky, defendants Lawson, Billings, and Nighbert, aided and abetted by one another, did knowingly and corruptly endeavor to influence, obstruct and impede the due administration of justice, by attempting to influence the testimony of James Rummage before a federal grand jury and by attempting to persuade him not to cooperate with federal law enforcement or to implicate others in a crime, as more specifically set forth in the overt acts in Count 6, above, all in violation of 18 U.S.C. §§ 1503 and 2.

Count 8 charges that from on or about a date in January 2008, until on or about a date in April 2008, at Franklin County, Fayette County, Rowan County, and other places in the Eastern

District of Kentucky, Lawson, Billings, and Nighbert, aided and abetted by one another, did knowingly attempt to corruptly persuade James Rummage with the intent to prevent the communication of information to a law enforcement officer of the United States relating to the commission or possible commission of a Federal offense, as more specifically set out in the overt acts in Count 6, above, all in violation18 U.S.C. §§ 1512(b)(3) and 2.

Defendants pled not guilty to the foregoing charges, and this matter is presently scheduled for a jury trial on June 23, 2009, in Covington, Kentucky.

This matter is before the court on "Defendant Lawson's Sixth Motion *In Limine* To Admit Rummage "Coaching Session" Recordings" [DE #212].[1]  This motion has been fully briefed and is ripe for review.[2]

## II. DEFENDANTS' SIXTH MOTION IN LIMINE CONCERNING "COACHING SESSIONS"

Defendants Lawson and Nighbert seek to admit recordings of two "coaching sessions" between government agents and witness James Rummage and to permit Lawson to solicit testimony from Rummage concerning these recorded "coaching sessions" and others that may have occurred.  The two recordings at issue in this motion occurred on March 12, 2008, and March 25, 2008.

The first recording on March 12 was of a coaching session with federal prosecutors, the FBI, state criminal investigators, Rummage, and Rummage's counsel, Marc Murphy, and it occurred *immediately* prior to a phone call between Rummage and attorney John Woodall and in between phone calls that same day between Rummage and Lawson that Lawson asserts the government will seek to admit at trial.  Defendants contend that the government's theory of the case is that

---

[1] On January 27, 2009, defendant Nighbert filed a response to and joined in this motion. [DE #230].

[2] Due to his present caseload and trial calendar, the presiding district judge has requested the Magistrate Judge to make a recommended disposition of pretrial, nondispositive motions.

Lawson intended to pay John Woodall, who was an outside attorney for several of Lawson's companies, to choose an attorney for Rummage who would encourage Rummage to take the Fifth Amendment when Rummage testified before the Grand Jury.

The second recording on March 25 is a coaching session where Rummage is being coached by FBI Agent Clay Mason and state investigator John Sparks. This "coaching session" occurred immediately prior to Rummage's last phone call with Lawson. Defendants submit that the government intends to portray that phone call (Rummage's last phone call with Lawson) as the most damaging of Rummage's conversations with Lawson.

## Discussion

Summarizing the defendants' argument made in support of the admission of the March 12 and March 25 taped "coaching sessions" at issue, defendants assert that (1) these two recordings are relevant and admissible under the Federal Rules of Evidence, (2) that exclusion of these "coaching session" recordings would violate Lawson's Sixth Amendment right of confrontation, and (3) this evidence is admissible to negate *mens rea*.

In responding to this motion, the United States acknowledges that Rummage was coached, and the United States notes that this "coaching" of Rummage "will be readily and unashamedly admitted by any witnesses asked at trial." Response to Motion to Admit "Coaching" Session, p. 2 [DE #238]. However, the United States objects to this motion, contending that the *contents* of the tape recordings in question are wholly irrelevant and add nothing to the evidence on uncontested issues. The United States further states the fact of the fictional nature of the script that Rummage followed in the phone calls to Lawson is not in dispute, and the United States advises that the government will readily have witnesses delineate what is or is not part of the script. The government further acknowledges that to the extent that something on these recordings can contradict anything claimed to be either true or scripted, the "coaching session" recordings could be used to impeach or clarify. Nevertheless, the government objects to the wholesale admission

5

of these two "coaching session" recordings, arguing that these coaching sessions were simply legitimate law enforcement techniques that can be controversial and misunderstood by the public and that the interjection of those techniques into a trial results in confusion and diversion of the jury from the true issue of a defendant's guilt or innocence.

**Analysis**

**A.     Relevance**

The Federal Rules of Evidence provide that "all relevant evidence is admissible." See Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Id. Thus, the court must first determine whether the "coaching session" recordings at issue are relevant. If so, ordinarily they would be admissible absent certain other considerations.

The indictment in this case charges, inter alia, that Lawson committed criminal acts by counseling Rummage that Rummage's attorney was incompetent and unstable and urging Rummage to follow the advice of Lawson's attorney of choice for Rummage, which advice allegedly would be to assert his Fifth Amendment privilege when Rummage appeared before a federal Grand Jury investigating this matter. However, it appears from the coaching sessions that it was Rummage, *not* Lawson, who may have initially introduced the idea of Lawson paying for Rummage's attorney, not because Lawson was trying to persuade Rummage to consult with a certain attorney, but because the government had coached Rummage to tell Lawson that he (Rummage) did not have the financial resources to employ his own attorney. Thus, the "coaching session" tapes arguably are relevant to Lawson's *mens rea.*

Additionally, the fact that much of what Rummage was instructed to say to Lawson during his phone calls to Lawson is a fabricated script is relevant and material to the jury's consideration of the obstruction charges. Although the government acknowledges that Rummage's statements to Lawson are false, the government argues that these false statements are not being offered to

6

prove the truth of the matter asserted, but merely to provide "context" to Lawson's statements. The government notes: ". . . these pretextual statements can never be considered assertions of fact admitted for their truth. In the typical case, the jury becomes very aware of what is 'the script' and what are true facts." See DE #172 at p. 3. However, in this case, the *only way* the jury will ever know for certain that Rummage was lying to Lawson is through the introduction of these coaching sessions tapes. The Magistrate Judge concludes that the "coaching session" recordings are objective, compelling evidence from which a jury should be able to make a determination on its own of what was truthful and what was untruthful without having to rely on the government's assertions and Rummage's testimony as to what portions were true statements and what portions were false statements.

In short, the Magistrate Judge concludes that the "coaching session" recordings are relevant because they assist in putting Rummage's telephone calls to Lawson in context.[3]

**B.     Sixth Amendment right of confrontation**

Lawson asserts that the subject "coaching session" tapes go to the heart of Rummage's credibility and that he intends to use these recordings to impeach Rummage's testimony. Lawson submits that these recordings (1) suggest that Rummage received an immunity deal from the government in exchange for his cooperation, (2) demonstrate Rummage's willingness to lie for his own benefit, (3) offer an explanation for why Rummage would lie about Lawson's involvement in the bribery allegations, (4) show the government's total control over Rummage's actions and statements on the recordings, (5) cast doubt on the core bribery allegations, and (6) suggest that

---

[3] Additionally, the Magistrate Judge notes that all of the witnesses on these recordings, Rummage, Mason, Sparks, and perhaps Taylor, will be available to testify at trial. Fed. R. Evid. 613 provides that any witness may be examined on his or her prior statements, including recorded statements. Thus, they may be asked at trial about any of the statements made during the coaching sessions.

Rummage created this fictional story with the government's assistance to place Lawson in the proverbial *Catch-22* situation.

Lawson insists that to exclude the "coaching session" recordings or to restrict his use of them in any way at trial to prevent him from using them fully in his cross-examination of Rummage would violate his Sixth Amendment right of confrontation.

In response, the government states that the immunity discussed on these tapes is simply part of the script and contends that no reasonable person could conclude otherwise. The United States also notes that coaching an informant on how to employ an elaborate fictional script during a sting operation is not improper. *United States v. Quinn*, 543 F.2d 640 (8th Cir. 1976). The United States does not directly address Lawson's argument that his Sixth Amendment right of confrontation would be violated if he were unable to use the "coaching session" tapes fully in his cross-examination of Rummage.

Under the Sixth Amendment, the defendants have every right to confront and challenge the government's evidence used against them. That right includes the ability to impeach an informant's testimony and to challenge the informant's credibility. The Magistrate Judge concludes that these "coaching session" tapes may have a tendency to impeach Rummage's testimony and to impact on his credibility. For this reason, the Magistrate Judge further concludes that the "coaching session" are admissible and that Lawson has the right to use them as he sees fit in cross-examining Rummage.

### III.  CONCLUSION

In summary, for all of the foregoing reasons, the Magistrate Judge concludes that the two "coaching session" recordings on March 12, 2008, and March 25, 2008, are relevant and that the Sixth Amendment affords the defendants the right to use them fully in their cross-examination of Rummage.

Accordingly, **IT IS HEREBY RECOMMENDED** that the motion of defendant Lawson and Nighbert to admit recordings of two "coaching sessions" occurring on March 12, 2008, and March 25, 2008, between government agents and witness James Rummage and to permit Lawson to solicit testimony from Rummage concerning these recorded "coaching sessions" and others that may have occurred [DE #212] be **GRANTED**.

The Clerk of the Court shall forward a copy of the Magistrate Judge's Report and Recommendation to the respective parties who shall, within ten (10) days of receipt thereof, serve and file timely written objections to the Magistrate Judge's Proposed Findings of Fact and Recommendation with the District Court or else waive the right to raise objections in the Court of Appeals.  28 U.S.C. § 636(b)(1)(B); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985); *Wright v. Holbrook*, 794 F.2d 1152, 1154-55 (6th Cir. 1986); Fed.R.Civ.P. 6(e).  A party may file a response to another party's objections within ten (10) days after being served with a copy thereof.  Fed.R.Civ.P. 72(b).

This 11th day of May, 2009.

Signed By:
*James B. Todd*
United States Magistrate Judge