UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CRIMINAL ACTION NO. 08-21-KSF

UNITED STATES OF AMERICA　　　　　　　　　　　　　　　　　　　　　　　PLAINTIFF

v.　　　　　　　　　　　　　　　**OPINION & ORDER**

LEONARD LAWSON,
CHARLES WILLIAM "BILL" NIGHBERT, and
BRIAN RUSSELL BILLINGS　　　　　　　　　　　　　　　　　　　　　　　DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

Currently before the Court is the motion of the defendants to dismiss the Second Superseding Indictment for vindictive prosecution [DE #425]. This matter is fully briefed and is now ripe for review. For the reasons set forth below, the defendants' motion will be denied.

**I.　　FACTUAL AND PROCEDURAL BACKGROUND**

In January 2008, the Office of Inspector General ("OIG") of the Kentucky Transportation Cabinet ("KTC") commenced an investigation into allegations that the confidentiality of the KTC engineer estimates may have been compromised. The following month, the Federal Bureau of Investigations, in conjunction with state authorities, began an investigation into the potential misapplication of funds and property of a federally-funded state government agency involving many of the same allegations the OIG had investigated. In early March 2008, James Rummage, an executive with the KTC, retained legal counsel and admitted to the FBI that he had given KTC engineer estimates to the defendant Leonard V. Lawson ("Lawson"), an owner and operator of road construction companies who regularly submitted bids and obtained road construction and repair contracts with the KTC. According to Rummage, he delivered the bids to Lawson at the direction

of the defendant Charles William Nighbert ("Nighbert"), the Secretary of the KTC, and, in return, received cash from Lawson. Beginning around March 12, 2008, Rummage began to cooperate with the FBI by providing information and recording conversations with persons who were subjects of the investigation.

On September 3, 2008, a federal grand jury returned an eight-count indictment against co-defendants Lawson, Nighbert, and Brian Russell Billings ("Billings"), an employee of a road construction company owned and operated by Nighbert, charging them with alleged violations of federal law relating to public corruption during Nighbert's tenure as Secretary of the KTC [DE #1]. As a result of the Court's Orders striking surplusage and dismissing two counts against Lawson and Nighbert [DE #245], a superseding indictment was subsequently returned against the three defendants on February 11, 2009 [DE #246]. The First Superseding Indictment alleges two separate conspiracies. The first conspiracy, set out in Counts 1 through 5, alleges a bribery conspiracy that occurred "from June 2006 until March 2008" among defendants Lawson and Nighbert, and Rummage, an unindicted co-conspirator, to violate various provisions of 18 U.S.C. § 666. Counts 6 through 8 allege a second conspiracy among the three defendants that occurred from "a date in January 2008, until a date in April 2008" to violate 18 U.S.C. §§ 1503 and 1512(b)(3)(witness tampering and obstruction of justice).

The defendants subsequently filed a joint motion for a severance of Counts 1 through 5 from Counts 6 through 8 pursuant to Rule 8 or 14 of the Federal Rules of Criminal Procedure [DE #117]. The Court, on April 27, 2009, granted the defendants' joint motion for Rule 14 severance of Counts 1 through 5 on the first bribery conspiracy from Counts 6 through 8 on the second witness tampering/obstruction of justice conspiracy [DE #336]. The need for the severance arose from the fact that audio recordings that might be admissible against Lawson and/or Billings in the second

2

conspiracy may not be admissible against Nighbert in the first conspiracy resulting in a "serious risk that Nighbert would be substantially prejudiced by a joint trial." The Magistrate Judge subsequently recommended on May 26, 2009 that two Government audio recordings should not be admitted against Lawson and four of the remaining audio recordings should not be admitted against Nighbert [DE #391]. The defendants' objections to the Magistrate Judge's Report and Recommendation are currently pending before this Court [DE #403].

On May 29, 2009, the Court denied the plaintiff's motion to reconsider the Court's earlier Order granting severance, noting that there was "a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence" of all three defendants [DE #396]. Just seven days later, the United States filed its Second Superseding Indictment, charging all three defendants with a single conspiracy, occurring from "June 2006 and continuing through in or about September 2008" to violate various provisions of 18 U.S.C. § 666 and to commit witness tampering in violation of 18 U.S.C. § 1512(b)(3) and obstruction of justice in violation of 18 U.S.C. § 1503 [DE #415].

## II.   THE DEFENDANTS' MOTION TO DISMISS

Currently pending is the defendants' motion to dismiss the Second Superseding Indictment for vindictive prosecution [DE #425]. Specifically, the defendants contend that the United States has violated their Fifth Amendment due process rights by adding or restructuring the charges against them as a result of the exercise of their statutory and constitutional rights. On the other hand, the United States contends that it has broad discretion to restructure the indictment in response to pre-trial rulings, and that new evidence reveals that the defendants were engaged in "one unified overarching conspiracy."

Generally, the government retains broad discretion in determining who to prosecute and what

3

charges to bring. *Wayte v. United States*, 470 U.S. 598, 607-08 (1985). As long as the prosecutor has probable cause to believe that the accused committed an offense, the decision whether to prosecute, and what charge to file or bring before a grand jury, rests in his or her discretion. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). This discretion, however, is tempered by constitutional restraints. In particular, the Due Process Clause of the Fifth Amendment prohibits the government from prosecuting a defendant because of some specific animus or ill will on the prosecutor's part, or to punish the defendant for exercising a legally protected statutory or constitutional right. *United States v. Goodwin*, 457 U.S. 368, 372 (1982).

The United States Supreme Court has addressed the issue of prosecutorial vindictiveness in the pre-trial setting in two cases. The first case, *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), involved actual vindictiveness on the part of the prosecutor during plea negotiations. Specifically, the state prosecutor threatened the defendant that if he refused to plead guilty to forgery, the original offense charged in the indictment, the prosecutor would bring habitual criminal offender charges as well. *Id*. at 358-59. The defendant elected to decline the plea offer and proceed to trial, and the prosecutor made good on his threat. *Id*. The defendant was ultimately convicted of the more severe charges. Upon review, the Supreme Court found no due process violation because the defendant was "free to accept or reject the prosecutor's offer." *Id*. at 363.

Then, in *United States v. Goodwin*, 457 U.S. 368 (1982), Supreme Court considered a case wherein the prosecutor made a pre-trial decision to modify the charges against a defendant. Unlike *Bordenkircher*, there was no allegation of an actual threat that could influence the defendant's behavior. Rather, the defendant claimed that the impermissible appearance of retaliation arose when the prosecutor obtained a four-count felony indictment after the defendant requested a jury trial on misdemeanor charges arising from the same incident. *Id*. at 370-71. Again, the Supreme Court

4

found no due process violation, explaining:

> [t]he possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest that could be explained only as a penalty imposed on the defendant is so *unlikely* that a presumption of vindictiveness certainly is not warranted.

*Id*. at 384 (emphasis in original).

According to the Sixth Circuit Court of Appeals, prosecutorial vindictiveness can be proven in two ways:

> A defendant can show "actual vindictiveness," by producing "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights," or the Court can find a presumption of vindictiveness by applying the "realistic likelihood of vindictiveness," standard which focuses on the prosecutor's "stake" in deterring the exercise of a protected right and the unreasonableness of his actions.

*United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005)(citing *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003) and *Bragan v. Poindexter*, 249 F.3d 476, 481-82 (6th Cir. 2001)). Actual vindictiveness is demonstrated by "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *Dupree*, 323 F.3d at 489. The Court found no such objective evidence. As a result, the proper standard in this case is whether there exists a "realistic likelihood of vindictiveness." *Poole*, 407 F.3d at 774; *United States v. Andrews*, 633 F.2d 449, 453 (6th Cir. 1980). To show prosecutorial vindictiveness under this standard, there must be: (1) exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; and (4) the intent to punish the defendant for exercise of the protected right. *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001). If the first three elements are present, this may help establish grounds to believe the fourth is present. *Id*. (citing *Bragan*, 249 F.3d at 481-82). Importantly, the "realistic likelihood of vindictiveness presumption" rarely applies to a prosecutor's pre-trial decisions. "A prosecutor should remain free before trial to

5

exercise the broad discretion entrusted to him to determine the extent of societal interest in prosecution. An initial decision should not freeze future conduct." *Goodwin*, 457 U.S. 382.

The first element, exercise of a protected right, is not in dispute. The defendants exercised their protected rights by filing their joint motion to sever and motions in limine to exclude evidence. However, the defendants cannot show that the prosecutor had any particular "stake" in preventing the assertion of these rights. There is no assertion that the prosecutor has a personal stake in the outcome of the case or personal animus toward the defendants. The defendants' motions were not exceptional; in fact "a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor." *Goodwin*, 457 U.S. at 381. Moreover, '[i]t is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." *Id*. The fact that the Court's previous rulings against the government had an adverse effect on the case against the defendants simply cannot amount to the "stake" necessary to establish vindictiveness.

In a similar case, *United States v. Moon*, 513 F.3d 527 (6th Cir .2008), the Sixth Circuit was presented with a pre-trial claim of prosecutorial vindictiveness. In that case, the defendant was originally indicted on three counts of health care fraud in violation of 18 U.S.C. § 1347. Upon the defendant's motion to dismiss the indictment for failure to include an interstate commerce element, the district court dismissed the indictment. The government subsequently returned a superseding indictment that again failed to include an interstate commerce element and was likewise dismissed. Finally, the government obtained a second superseding indictment that included the three original counts as well as an additional count alleging that the defendant made false statements to government agents in violation of 18 U.S.C. § 1001. The district court denied the defendant's motion to dismiss the indictment for prosecutorial vindictiveness, and the matter proceeded to trial,

ultimately resulting in her conviction on all four counts. In analyzing the prosecutor's stake in deterring the exercise of the defendant's right to file the motions to dismiss, the Sixth Circuit found that "the fact that the government had to return for a superseding indictment does not constitute a sufficient stake in deterring Defendant's exercise of a protected right." *Id*. at 535. *See also United States v. Ewing*, 1994 WL 577055 *3 (6th Cir. Oct. 18, 1994)(holding that "some repetition of prosecutorial efforts," in the form of a reindictment, does not constitute a sufficient "burden" to trigger a "realistic likelihood of vindictiveness" in the pretrial context).

The defendants also cannot show that the prosecutor acted unreasonably in filing the Second Superseding Indictment. It is realistic for a prosecutor to react to adverse pretrial and evidentiary rulings by restructuring its case to improve the chances of conviction. As noted by the Supreme Court, at the pre-trial stage of the proceedings, "the prosecutor's assessment of the proper extent of the prosecution may not have crystallized," *Goodwin*, 457 U.S. at 381. The United States contends that the Second Superseding Indictment is based to some extent on evidence unavailable or unknown at the time of the earlier indictments. Specifically, the United States points to new information suggesting a single conspiracy, including evidence of the following: continued phone activity between Nighbert, Rummage, Billings and Lawson, even after Nighbert left the KTC; a switch from state issued phones to personal phones; the timing and cluster of calls matching the date of certain alleged obstructive events; the fact that Lawson had not received a significant portion of his compensation on the road contracts at issue when the obstructive conduct occurred; and the fact that Lawson had lobbied for Rummage to become chief highway engineer. While the defendants argue that this information has been known to the government for months, the evolving nature of the criminal prosecution and associated investigations may have reasonably changed the prosecutor's assessment of the information and the appropriate charges. Moreover, the new indictment was

7

approved by the grand jury and therefore "presumed to have rested on probable cause." *Suarez*, 263 F.3d at 481.

Although the United States initially proceeded on the theory that two separate conspiracies occurred, this pretrial strategy was not set in stone by the mere filing of an indictment, and the prosecutor is free at this stage of the proceedings to change course as the Court's rulings and new evidence warrants. Accordingly, the Court cannot find that the prosecutor acted unreasonably or with any intent to punish the defendants. Other than the fact that they exercised their statutory and procedural rights, the defendants are unable to establish the remaining elements of a *prima facie* case of prosecutorial vindictiveness.[1]

However, even assuming that the defendants made a *prima facie* showing of vindictive prosecution, the United States has adequately rebutted any presumption of vindictiveness. When considering whether the government has rebutted a presumption of vindictiveness, the Court must determine "whether there exists objective information in the record to justify the increased sentence or additional charges." *Poole*, 407 F.3d at 776. The United States has pointed to the Court's order severing the trial as a non-vindictive basis for restructuring the indictment. While the United States argues that initially it could have charged one unified conspiracy, it elected to present the evidence as two conspiracies, "primarily because it was believed there was no significant advantage with regard to the admissibility of evidence or in terms of guideline sentencing to arguing for a unified conspiracy." However, with the Court's ruling to sever the trial of the two conspiracies, the United States was presented with certain evidentiary hurdles that could be potentially cured by charging a single unified conspiracy so that the jury could be presented with "all admissible evidence in one

---

[1] By failing to come forward with a colorable basis for their vindictive prosecution claim, the defendants are not entitled to any discovery on this issue.

8

proceeding," not "in a piecemeal fashion." Moreover, as described above, the United States has alleged additional evidence justifying charging a single unified conspiracy. Based on this objective evidence, it is clear that the United States has adequately rebutted any presumption of vindictiveness by showing that its decision to re-indict was not motivated by a vindictive desire to punish the defendants for exercising their statutory and constitutional rights, but rather a re-evaluation of the case, in light of all the Court's pretrial rulings and the discovery of additional information.

### III. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS**:

(1) that the defendants' motion for leave to file an oversized reply memorandum [DE # 452] is **GRANTED**, and the Clerk is directed to **FILE** the tendered reply memorandum; and

(2) that the defendants' motion to dismiss the Second Superseding Indictment [DE #425] is **DENIED**.

This July 6, 2009.



Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**