**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT**

| | |
|---|---|
| **CRIMINAL NO. 3:08-cr-21-DCR** | **ELECTRONICALLY FILED** |
| **UNITED STATES OF AMERICA** | **PLAINTIFF,** |
| VS.   **RESPONSE TO DEFENDANTS'** **JOINT MOTION TO SEVER** | |
| **LEONARD LAWSON,** **CHARLES WILLIAM NIGHBERT, and** **BRIAN BILLINGS** | **DEFENDANTS.** |

\* \* \* \* \*

## Introduction

The Defendants' Motion to Sever should be denied. The preponderance of the evidence shows that Lawson, Nighbert, Billings, and Rummage were parties to the charged conspiracy and therefore Billings will not be prejudiced by a joint trial with Lawson and Nighbert.

## Law

"It is well settled that joinder is proper ... where an indictment charges multiple defendants with participation in a single conspiracy," *United States v. Warner*, 690 F.2d 545, 551 (6th Cir. 1992), and that "persons jointly indicted should be tried together." *United States v. Moore*, 917 F.2d 215, 220 (6th Cir. 1990). "When a defendant seeks severance, he has a heavy burden of showing specific and compelling prejudice ...," *United States v. Causey*, 834 F.2d 1277, 1287 (6th Cir. 1987)(citations omitted), and the fact there is a disparity in the quantity or quality of evidence between defendants "is not in itself sufficient to demonstrate prejudice under Rule 14." *United States v. Warner*, 690 F.2d at 554;*United*

*States v. Moore*, 917 F.2d at 220 (citations omitted).

### The Evidence Does Not Need to be Compartmentalized

The Defendants assert that the government has failed to meet is burden under *Enright* and therefore Billings' statements are inadmissible hearsay against Nighbert and Lawson and that Nighbert's and Lawson's statements are inadmissible hearsay against Billings. They argue that a joint trial of Nighbert, Lawson, and Billings would require numerous limiting instructions and that jury confusion would result to an extent the jury would be unable to properly compartmentalize the evidence.

Their argument, however, fails because their initial assertion is false. As set forth in the government's pleadings (DE 493 & 499), which will not be restated here, the evidence presented by the government at the *Enright* hearing clearly shows that Nighbert, Lawson, Billings, and Rummage were members of the conspiracy charged in Count 1, that the statements made by them while members of the conspiracy were made during and in furtherance of that conspiracy, and that as such their statements are admissible against one another as co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E). Consequently, there is no factual or legal basis to support the Defendants' assertion that a joint trial would require an "evidentiary patchwork" that would result in jury confusion.

Rather, a joint trial of Lawson, Nighbert, and Billings will result in no more confusion than any other case involving multiple defendants charged with conspiracy to violate the law. As the Sixth Circuit Court of Appeal recently remarked on the issue of severance:

> "We recognize that, in a joint trial, there is always a danger that the jury will convict on the basis of the cumulative evidence rather than on the basis of the evidence relating to each defendant. However, we adhere to the view, as previously stated by our court, that '[t]he jury must be presumed capable of sorting out the evidence and considering the case against each defendant separately.'" The presentation of evidence applicable to more than one defendant is simply a fact of life in multiple

defendant cases.

*U.S. v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008)(citations omitted)(quotations in original). Like in *Driver*, the Court here will "specifically admonish[] the jury that it [i]s their duty to consider separately the evidence against, and the guilt of, each defendant." *Id.*

### There is Not Wide-Spread Disparity of Evidence

The Defendants' assert there is a "wide disparity in evidence between Billings and his two co-defendants ...." (DE 498 at p.6). They argue that Billings should be severed from a joint trial with Nighbert and Lawson because Nighbert's and Lawson's statements, even if admitted as co-conspirator statements, will substantially prejudice him. This argument is both factually and legally unsupported. While it is true that Billings' role in the conspiracy was different and shorter in duration than that of Nighbert, Lawson, and Rummage, the most compelling evidence of Billings' participation in the conspiracy comes from his own words and actions.

In short, the evidence shows that Nighbert, Lawson, and Rummage agreed to provide Lawson with engineer's estimates prior to letting and that to insure the success of their agreement they agreed to a "cover story" that the engineer's estimates were provided to only Nighbert for budgetary purposes. While everyone initially stuck with the cover story, Rummage began to waiver and ultimately, although unknown to the other co-conspirators, began cooperating with the government. In light of Rummage's purported wavering, Lawson began an effort to persuade Rummage to stick with the cover story and to assert his Fifth Amendment rights. Lawson further recruited Billings to assist him in this effort by having Billings pass information between Lawson and Rummage and to keep Lawson abreast of Rummage's activities, which Billings did. Moreover, because Billings and Rummage had developed a professional relationship over the years, Lawson used Billings to help allay

Rummage's fears about the impending investigation [Government Hearing Exhibit 90b at 5, lines 28-29], and his concern of whether Nighbert and Lawson would stick with the cover story or whether they would hang him out to dry [*Id.* at 2, lines 2-4].[1]

One example shows how it will be Billings' words and actions, more than the statements of Nighbert and Lawson, that will provide the basis on which a reasonable jury could conclude that he knowingly and voluntarily joined in the obstruction aspect of the conspiracy. On March 25, 2008, Billings and Rummage met in the parking lot of the Holiday Inn on Newtown Pike. Any reasonable person viewing and listening to the meeting will conclude that Billings was attempting to conceal the message typed and displayed on his cellular telephone; a message which Rummage testified read "don't talk out loud," "if you agree to switch attorney's, nod your head," and if you switch attorneys "costs will be taken care of." [R.480: James Rummage, TR (Enright Hearing) at 17-18.] At the time of this meeting Billings knew that law enforcement was investigating the allegation that Rummage gave engineer's estimates to Lawson prior to letting. Billings also knew that Rummage was contemplating following the advice of his current attorney, which was to cooperate with the government in exchange for immunity, while Lawson was attempting to persuade Rummage to switch attorneys and assert his Fifth Amendment rights.

Even assuming for the sake of argument that there is some disparity in the quantity or quality of evidence between Billings and his co-defendants, that alone would not be a

---

[1] The "in furtherance" rule "is satisfied when a co-conspirator is apprised of the progress of the conspiracy or when the statements made are designed to induce his assistance, ... as well as when statements are 'made to keep a conspirator abreast of a co-conspirator's activities, or to induce continued participation in a conspiracy, or to allay [his] fears .... This court has held that statements designed to gain the trust and assurance of co-conspirators, to provide incentives for negotiations and to peak interest are also in furtherance of a conspiracy." *United States v. Rios*, 842 F.2d 868, 874 (6th Cir. 1988)(citations omitted)(quotations in original). These are exactly the types of activities that Lawson recruited Billings to help with during the obstruction aspect of the conspiracy and the types of activities that Billings knowingly undertook. To conclude he was not part of the obstruction aspect of the charged conspiracy is to ignore the obvious.

basis for severance. *Warner*, 690 F.2d at 554. Furthermore, "[a]bsent a showing of substantial prejudice, spill-over of evidence ... does not require severance, *Moore* , 917 F.2 at 221, and [a] defendant has no right to a separate trial merely because his likelihood of acquittal would be greater if severance were granted." *Id.* (citation omitted).

### Conclusion

Nighbert, Lawson, and Rummage were each a party to a single continuing agreement to provide Lawson with engineer's estimates prior to letting and that to insure the success of this continuing agreement they further agreed to a "cover story" to conceal their agreement if anyone should inquire. When law enforcement did, in fact, begin to inquire about their activities, and especially when it appeared that Rummage was going to abandon the "cover story," Lawson recruited Billings to not only assist him in monitoring Rummage's activities and the status of the ongoing investigation, but to also assist him in attempting to persuade Rummage to change attorneys. Billings' words and actions clearly show that he undertook these efforts to assist Lawson knowing that Nighbert, Lawson, and Rummage were the focus of an ongoing investigation, and knowing that Rummage was considering cooperating with law enforcement in exchange for immunity.

Billings is properly joined as a member of the conspiracy, and the statements by his co-conspirators, Nighbert, Lawson, and Rummage, are admissible against him just as his statements are admissible against them. While there is no evidence that Billings' participated in the bribery aspect of the conspiracy, the evidence that will be presented to demonstrate his knowing and voluntary involvement in the obstruction aspect of the conspiracy is equal in quantity and quality to that which will be presented to show that Lawson and Nighbert were too involved in the obstruction aspect of the conspiracy.

Billings has failed to show he will suffer specific and compelling prejudice from a

joint trial with Nighbert and Lawson. The Defendants' motion for severance should be denied.

                Respectfully submitted,

                JAMES A. ZERHUSEN
                UNITED STATES ATTORNEY

BY:   /s/Kevin C. Dicken
       Kevin C. Dicken
       Assistant United States Attorney
       260 West Vine Street
       Lexington, KY  40507-1612
       (859) 685-4888

BY:   /s/Kenneth R. Taylor
       Kenneth R. Taylor
       Assistant United States Attorney
       260 West Vine Street
       Lexington, KY  40507-1612
       (859) 685-4874

Certificate of Service

  I hereby certify that on September 28, 2009, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system.

  The foregoing document will be served via the CM/ECF system on counsel for the Defendants.

              /s/Kevin C. Dicken
              Kevin C. Dicken
              Assistant United States Attorney