UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | *Electronically Filed* |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 3:08-cr-21-DCR |
| | ) | |
| LEONARD LAWSON, | ) | |
| CHARLES WILLIAM "BILL" NIGHBERT, and | ) | |
| BRIAN RUSSELL BILLINGS, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
THE GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT RECORDINGS**

Defendants Leonard Lawson ("Lawson") and Charles W. Nighbert ("Nighbert") respectfully submit the following Memorandum in opposition to the Government's Motion *in Limine* to Admit Recordings (Doc. 538; "the Motion"). Defendants also submit the Affidavit of Jon Woodall in opposition to the Motion.

I.      **Introduction.**

In the Motion, the Government seeks admission of evidence, including audio and video recordings, of statements and conduct by Defendant Brian Billings ("Billings") in conversations and meetings with James Rummage ("Rummage").

The Government initially contended that the Billings evidence was admissible against Lawson under Fed. Evid. R. 801(d)(2)(E) as statements of a co-conspirator. After hearing three days of evidence, the Court rejected that contention, holding that "the Court cannot find any evidence that Billings agreed to join any conspiracy." (Doc. 511 at 21.)

The Government then filed a Motion for Partial Reconsideration and Reply. (Docs. 513, 523.) Taking a scattershot approach, the Government contended that the evidence is admissible as "*res gestae,*" "verbal acts," and other miscellaneous claims. (Doc. 523 at 7-8) Each of these contentions is erroneous as a matter of law. *See* Section II of this Memorandum.

In the Motion for Partial Reconsideration – in a cursory assertion unsupported by any specific citation to evidence or to legal authority – the Government also argued for the first time that:

> Billings' statements constitute both "statement(s) by a person authorized by the party (Lawson) to make a statement concerning the subject" and "statement(s) by the party's (Lawson) agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, within the meaning of FRE 801(d)(2)(C) and (D). Accordingly, these statements are admissible as admissions of Lawson.

(*Id.* at 15-16.) In the Motion, the Government's only discussion of Rules 801(d)(2)(C) and 801(d)(2)(D) is a two-sentence paragraph that merely referred back to the Motion for Partial Reconsideration and cites a single case. (Doc. 538 at 5.) Again, the Government's Motion failed to cite any evidence to establish a foundation for admitting the Billings' statements under either of those Rules. Rules 801(d)(2)(C) and 801(d)(2)(D) demand proof, by a preponderance of evidence, showing the required foundation facts before hearsay may be admitted. The Government has failed to meet its burden of proof. *See* Sections III - V of this Memorandum.

For all of these reasons, the Court should deny the Government's Motion.


## II.    Billings' Hearsay Statements Are Not Admissible As "*Res Gestae*," "Verbal Acts," Or Any Other Miscellaneous Label.

The Government, at various stages of this proceeding, has argued that Billings' statements should be admitted against Nighbert and Lawson as non-hearsay, sometimes calling

these statements "verbal acts" and other times calling them "*res gestae.*"   However, the Sixth

Circuit and other courts have limited the scope of these admissibility doctrines well short of

where the Government is trying to extend them.   As an initial matter, the concepts of verbal acts

and res gestae are not interchangeable and cannot be conflated.  They are distinct legal theories

with their own separate standards of admissibility that the Government has failed to satisfy.

Billings' statements therefore cannot and should not be admitted under either of these different

theories.

A.      ***Res Gestae* Is Not a Valid Legal Basis For Admitting Hearsay Statements in
        the Sixth Circuit**

At the same time that the Government has tried to shoehorn these different categories of

non-hearsay into a single argument for admissibility, it has also confused different meanings of

the term "*res gestae.*"   The Sixth Circuit has used "*res gestae*" to define a category of

"background" evidence or prior acts that are not otherwise admissible under the Federal Rules of

Evidence.  *See U.S. v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) ("*Buchanan*, *Paulino* and other

cases dealing with this issue teach that background or *res gestae* evidence consists of those other

acts that are inextricably intertwined with the charged offense or those acts").  "*Res gestae*" in

that sense is an exception to Federal Rule of Evidence 404 that permits the use of extrinsic prior

act evidence, as this Court permitted in its recent ruling on Lawson's recordings, to explain

certain limited background circumstances.  *See* Doc. 544 at 2 (citing *U.S. v. Dudek*, 560 F.2d

1288, 1294 (6th Cir. 1977)); *Hardy*, 228 F.3d at 749 ("The above analysis of our prior cases on

this subject reveal that, rather than providing unfettered rein, the definition of background or res

gestae evidence evolved by those cases imposes severe limitations in terms of the temporal

proximity, causal relationship, or spatial connections that must exist between the other acts and

the charged offense").  None of these Sixth Circuit cases allowed admission of *hearsay* under the

3

guise of "*res gestae.*"  Rather, *every one* of those "*res gestae*" cases involved the admissibility of prior acts evidence under Rule 404(b).

The Government here, by contrast, asserts that "*res gestae*" is an exception to the hearsay rule which permits admission of Billings' out-of-court statements against Nighbert and Lawson. That is a misuse of the doctrine that the Sixth Circuit has flatly rejected.  In *Haggins v. Warden*, 715 F.2d 1050, 1056 (6th Cir. 1983), the Government argued that out-of-court statements made by a minor were properly admitted "under the *res gestae* exception to the hearsay rule."  The Sixth Circuit rejected that argument stating in no uncertain terms that "[w]e are unwilling to recognize such an exception."  The Court went on to say that the "the phrase 'res gestae' has long been not only entirely useless, but even positively harmful.  It is useless because every rule of evidence to which it has ever been applied exists as a part of some other well-established principle."  *Id.* (citing 6 J. Wigmore *Evidence* § 1767 (J. Chadbourne rev. 1976)).

As the Fifth Circuit has stated, "[t]he old doctrine of '*res gestae*' has been supplanted by Fed. R. Evid. 803."  *FDIC v. Fidelity & Deposit Co. of Maryland*, 45 F.3d 969, 979 (5th Cir. 1995).  The old concept of *res gestae* referred to several types of hearsay evidence: (1) declarations of present bodily condition; (2) declarations of present mental state and emotion; (3) excited utterances; and (4) declarations of the present sense impression.  The Federal Rules of Evidence, the Fifth Circuit explained, "now explicitly accounts for these exceptions" to the hearsay rule.  *Id.*.   And the Third Circuit agreed, noting that "there is no such exception to the prohibition against hearsay.  *If admissible, the declaration must qualify under one of the genuine exceptions to the hearsay rule.*  The old catchall, 'res gestae,' is no longer part of the law of

evidence." *Miller v. Keating*, 754 F.2d 507, 509 (3d Cir. 1985) (citation omitted; emphasis added).[1]

This is not the circumstance the Court was presented with in ruling on the admissibility of Lawson's own statements about prior acts as *res gestae*. *See* Doc. 544 at 2. Rather this is a question of the admissibility of Billings' out-of-court hearsay statements. Having failed to satisfy the co-conspirator exception to the hearsay rule, the Government may not use the muddled concept of "*res gestae*" to bypass the hearsay prohibition altogether.

> **B.    None Of The Billings' Statements Are "Verbal Acts" With Independent Legal Significance.**

In asserting its "verbal acts" theory, the Government asks the Court to extend the doctrine to a place where, as far as the Defendants can determine, no other federal court has ever gone.

---

[1] The cases cited by the Government are not to the contrary. In fact, the unpublished opinion from the Tenth Circuit cited by the Government, *Velarde v. Reid*, 2007 WL 1128871 (10th Cir. 2007), raised an issue under the Colorado Rules of Evidence, not the Federal Rules of Evidence. The Tenth Circuit, therefore, said that it was *not* going "to review state law questions about the admissibility" of evidence, but nonetheless said in *dicta* that the "recordings' admission as *res gestae* evidence gives *us pause*" because of "(1) the trial court's failure to instruct the jury that they were being admitted only as *res gestae*; (2) the fact that the recordings were made by an informant with a motive to direct the conversations; and (3) the heavy reliance placed on the recordings as direct evidence of the charged crime." *Id.* at *2.

This last factor cited in the *Velarde* decision is one the Defendants have repeatedly raised as a reason for excluding all "*res gestae*" evidence – both hearsay and background evidence – in this case. A jury is likely to give these recordings disproportionate weight in its deliberations because of the government's contention that this is "direct evidence of the charged crime" even though, under this theory of admissibility, these statements cannot be admitted for the truth of the matter asserted. These statements also contain other hallmarks of unreliable testimony that typically result in the *exclusion* of evidence – one of the most compelling of which is that Billings has not and will not be subject to cross examination about these statements and Rummage's statements on the recordings can only be admitted for "context" and not for their truth. This creates a tremendous risk a jury will convict on the basis of these recordings alone – despite all of the restrictions that will be placed on their use. These considerations should give this Court even more "pause" than they gave the Tenth Circuit, given the even more extreme circumstances that admission would create here.

The Government is asking this Court to admit the out-of-court statements of a third-party, non-co-conspirator (Billings) as the verbal acts of another party (Lawson). That was never the intention of the doctrine, nor can the Government satisfy the other threshold requirements for admitting Billings' statements as verbal acts.

Verbal acts, as their name describes, are statements that rise to the level of an act because the fact that the words are spoken has *independent legal significance*. *See* Advisory Committee note to Fed. R. Evid. 801(c) ("exclude[d] from hearsay [is] the entire category of 'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights"); *see also Preferred Prop., Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 799 (6th Cir. 2002) ("The verbal acts doctrine applies where *legal consequences* flow from the fact that words were said, *e.g.*, the words of offer and acceptance which create a contract"). The only way Billings' statements could fit this definition is if the statements themselves constitute the crime of obstruction of justice – which, as a matter of law, they do not. In fact, on this point, the Government is impeached by its own case agent, Mason, who testified that counseling someone to see a lawyer or exercise their Fifth Amendment rights does not constitute obstruction of justice. (Mason, VI-24, lns. 22-25). The Court has likewise concluded that Billings' "advice to start a legal defense fund does not amount to obstruction of justice or witness tampering" and Billings' notes – if Rummage were believed – "suggesting [to Rummage] a Frankfort attorney, David Guarnieri – do not amount to sufficient evidence to show *any* agreement to obstruct justice." Doc. 511 at 20 (emphasis added).

Here the Government is really asking the Court to use Billings' statements as proof of Lawson's criminal intent. *See* Doc. 538 at 6 ("The evidence is overwhelming that Lawson was attempting to influence Rummage in part by using Billings to communicate with him"). The

Court does not need to read any further than the Government's own Motion, however, to know that to qualify as verbal acts of independent legal significance, Billings' words *themselves* must constitute real crimes, such as threats, solicitation, or the purchase of illegal goods, not simply evidence of Lawson's intent. *See, e.g., U.S. v. Brewer*, 2009 WL 1747843 (6th Cir. June 18, 2009) (instructions to pave certain driveways for votes were verbal acts); *Pizano v. Davis*, 2006 WL 4975357 (E.D. Mich, March 8, 2006) (threats are verbal acts); *U.S. v. Burke*, 495 F.2d 1226 (5th Cir. 1974) (same); *U.S. v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008) (asking if witness knew anyone who could kill someone was solicitation and therefore a verbal act); *U.S. v. Hamilton*, 689 F.2d 1262, 1279 n. 4 (6th Cir. 1982) (ordering explosives to be used in carrying out conspiracy were verbal acts). [2]

The Government has previously provided to the Court good examples of the types of statements that have been admitted as verbal acts by other courts: "put the money in the bag"; "don't say a word or I'll kill you"; "I have a gun, now do what I say"; and "I want some drugs." *See* Doc. 493 at 3. None of Billings' statements resemble anything similar to these "verbal acts" or constitute acts of obstruction. Here again, Rummage testified at the *Enright* hearing that "[i]n none of these recordings does [Billings] ever tell [me] to lie to the FBI." (Rummage, IV-28). Billings never told Rummage "to assert [his] Fifth Amendment rights or to stop talking to the

---

[2] The Government's citation to the Sixth Circuit's opinion in the *Hamilton* case is particularly instructive because there, in a multi-defendant case, the defendants argued that secretly recorded statements of their co-defendants could not be used against each of them independently as co-conspirator statements. Importantly for purposes of this Motion, the Sixth Circuit agreed that all of those statements had to be analyzed for admissibility under Rule 801(d)(2)(E) under the legal standards in the *Vinson* and *Enright* decisions that this Court applied in determining that Billings' statements are not admissible as co-conspirator statements. The *only* statements (on hours of undercover recordings) that the *Hamilton* court permitted to be used as "verbal acts" were the illegal purchases of explosives – statements that *on their own* violated federal law. Both the district court and the court of appeals in *Hamilton* analyzed the other statements on the recordings under the co-conspirator rules.

FBI." (Rummage, IV-29). Billings never told Rummage that "you've got to take the lawyer that Jon Woodall recommended." (Rummage, IV-31). Rummage did not think that Billings' advice that "he ought to hire a lawyer" constituted an obstruction of justice. (Rummage, IV-32). Rummage testified that all the notes Billings allegedly wrote "*never* said, 'Jim, you need to lie to the FBI,'" or "'you got to lie to the grand jury,'" or "'you got to take the Fifth Amendment,'" or "'don't talk to the government." (Rummage, IV-35).

The Government asserts that by simply writing the name "David Guarneri" Billings committed a verbal act. (Def. Ex. 1 at 8). However, the Government's theory was that David Guarnieri was under the control of Lawson, would do whatever was in Lawson's best interest, not Rummage's, and would advise Rummage not to cooperate with the investigation. (Mason, VI-23). Yet Guarnieri testified at the *Enright* hearing that he had never been contacted by Lawson, Nighbert, Jon Woodall, Jaron Blandford or anyone else connected to the case and had never been asked to represent Rummage, or, indeed any "unnamed potential client for whom someone else would be paying the fee." (Guarnieri, II-83). He certainly had no arrangement to do Lawson's bidding by taking money from Lawson to represent Rummage and instruct Rummage to take the Fifth Amendment to stop the investigation. (Guarnieri, II-87). Moreover, Guarnieri never even would have considered consenting to such an arrangement. (Guarnieri, II-86). The Government can argue that Billings' referral of Guarnieri may indicate something about his intent – albeit certainly nothing nefarious – but standing alone it does not constitute a verbal act.

### C.    The Government Is Improperly Seeking To Use Billings' Statements As Substantive Evidence Of Guilt Against Nighbert And Lawson On The Bribery Charges.

The Government has also argued that Billings' statements are admissible as verbal acts to prove the consciousness of guilt by Nighbert and Lawson on the underlying bribery charges.  In fact, Billings' statements, offered as evidence of substantive guilt against Nighbert and Lawson on the bribery charges, are inadmissible hearsay under *Lyle v. Koehler*, 720 F.2d 426 (6th Cir. 1983).  There, the Sixth Circuit ruled that statements by a co-defendant cannot be admitted against a non-declarant as substantive evidence of that non-declarant's guilt and that statements suggesting consciousness of guilt of one co-defendant *cannot be used as substantive evidence of guilt against another co-defendant*.[3]   720 F.2d at 434.

In *Lyle*, Lyle's co-defendant on the robbery charge, Kemp, wrote letters seeking to have two friends corroborate his statements to the police and create a false alibi.  The Sixth Circuit ruled the letters would be inadmissible hearsay against non-declarant Lyle because the letters were being offered for their truth, to demonstrate that the defendants needed a false alibi and thus were guilty of the underlying crimes.  *Id.* at 432-33 (the letters sought "to have the jury infer the defendants' guilt directly from the substantive message embodied in the letters themselves," and "the inferences they necessarily invite form an integral part of the letters.  They were introduced because by inference they assert the proposition of fact that Lyle and Kemp committed the

---

[3] Indeed, the Sixth Circuit stated in *Lyle* that such evidence would pose a Confrontation Clause problem under *Bruton v. U.S.*, 391 U.S. 123 (1968).  720 F.2d at 434 (admission of the letters written by Kemp as evidence against Lyle improper because the jury would have had to infer that "the letters' object was to procure fabricated alibi testimony, and that such object evidenced a guilty mind.  The close association between Lyle and Kemp … necessarily invited the jury to extend the inference of Kemp's guilty mind to the substantive guilt of both defendants ….  Add[ing] substantial, perhaps even critical weight to the Government's case [against Lyle] in a form not subject to cross examination") (quoting *Bruton*, 391 U.S. at 135-36, 127-28).

robbery and hence need[ed] an alibi.  Accordingly, we conclude that the letters are [inadmissible] hearsay ….").  The Government's attempts to use Billings' statements as substantive evidence against Nighbert and Lawson that they were engaged in a cover-up because they were guilty of the underlying bribery charges is precisely what *Lyle* prohibits.  And as in *Lyle,* the statements are inadmissible hearsay against Nighbert and Lawson.

The Sixth Circuit's *Lyle* decision also points to a more fundamental problem with the Government's logic – which explains why the Government remains so intent on injecting Billings into its bribery case despite the testimony of its own witnesses that Billings had no involvement or knowledge of the alleged bribery events.  The Government recognizes that its case on bribery is so extraordinarily weak, that it wants to argue to a jury that Billings' actions constitute obstruction and therefore, prove that Nighbert and Lawson must have committed bribery and conversion.  At the same time, it also wants to argue to the jury that, because Nighbert and Lawson committed bribery and conversion, it must mean that Billings intended to obstruct the investigation into these two men.   Under no circumstance should the Government be allowed to use such specious circular reasoning before the jury.  None of Billings' out-of-court statements are admissible to prove that Nighbert and Lawson must be guilty of bribery.

### D.     The Government Is Improperly Seeking To Admit Many Of Billings' Statements For Their Truth.

Verbal acts are not admissible for their truth.  Fed. R. Evid, 801(c); *U.S. v. Harris*, 200 Fed. Appx. 472, 487 (6th Cir. 2006) ("the coconspirator exception allows statements to be introduced as proof of the matters asserted, while the verbal-acts doctrine does not").   Yet the Government has designated as "verbal acts" statements by Billings that Lawson needed to talk to Rummage or that Lawson needed to know what was going on – statements that clearly are being

admitted for their truth to show that Lawson in fact wanted to talk to Rummage. (Def. Ex. 1 at 8). Statements warning Rummage to be quiet, that "some rooms have ears," likewise impermissibly are being offered for their truth, that Billings believed the room possibly was bugged. (Def. Ex. 1 at 8). *See Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 717 (6th Cir. 1999) (statement that owner would sell her carving for $3 million was inadmissible because it was being offered for its truth that she believed the carving was worth $3 million). Billings' alleged text on his phone that "If you use Guarnieri, it won't cost you anything," is being offered for its truth – that if Rummage changed attorneys to Guarnieri he would not have to pay. (Def. Ex. 1 at 9). All of these statements are not significant because they were made – their relevance arises from their *content*. *See U.S. v. Harwood*, 998 F.2d 91, 97 (2d Cir. 1993) (Statement by a co-defendant that Harwood was "in the wrong place at the wrong time" when LSD was seized was inadmissible because "the fact that [the codefendant] made the statement … is irrelevant. What would be relevant is that Harwood was in truth in the wrong place at the wrong time …."). These statements are being offered for their truth and, by definition, are therefore inadmissible hearsay for this additional reason.

**III.    To Admit Billings' Hearsay Under Evid. R. 801(d)(2)(C) or 801(d)(2)(D), The Government Must Establish The Necessary Foundation By A Preponderance Of The Evidence And Without Resort To Speculation.**

It is axiomatic that the Government must lay a proper foundation before any out-of-court statements by Billings can be admitted against Lawson. *E.g., Mitroff v. Xomox Corp.,* 797 F.2d 271, 276 (6th Cir. 1986) (under Rule 801(d)(2)(D), "a proper foundation must be made for such a statement to show it was within the scope of his agency or employment"). The Government bears the burden of proving the required foundation by a preponderance of the evidence. Fed. R. Evid. 801, Advisory Committee Note, 1997 Amendment (*Bourjaily v. U.S.*, 483 U.S. 171

(1987), "requires these preliminary questions [under Rule 801(d)(2)(E)] to be established by a preponderance of the evidence. … [T]he amendment extends the reasoning of *Bourjaily* to statements offered under subdivisions (C) and (D) of Rule 801(d)(2).").[4]

As stated in Rule 801(d)(2), "The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C), [or] the agency or employment relationship and scope thereof under subdivision (D) … ." This is consistent with the well-established principle of agency law that a purported agent's authority cannot be proven through the statements of the agent; rather, proof of authority must be based on the statements and acts of the alleged principal. *See* Restatement (Third), *Agency*, § 3.01 (2006); Restatement (Second), *Agency*, §26 (1958).

The Government cannot meet its burden of proof by asking the Court to engage in speculation. This Court noted as much when it rejected the Government's co-conspirator theory under Rule 801(d)(2)(E) because it "rests entirely in inferences, suspicion, and speculation." (Doc. 511 at 19.) *See also, e.g., Malina v. Baltimore Gas & Elec. Co.*, 18 F. Supp.2d 596, 610 (D. Md. 1998) (rejected admission of out-of-court statements because the court "would be forced to speculate … whether … her statements to Malina would constitute an admission under Fed. R. Evid. 801(d)(2)").

---

[4] *See also, e.g.,* Weinstein's *Federal Evidence*, § 801.32 (2009) (Rule 801(d)(2)(C): "inquiries relating to a declarant's authority must be treated as preliminary questions to be established to the trial judge's satisfaction by a preponderance of the evidence under Rule 104(a)") (footnote omitted); *id.*, § 801.32 (Rule 801(d)(2)(D): "[i]nquiries relating to an agency or employment relationship and its scope must be treated as preliminary questions to be established to a judge's satisfaction by a preponderance of the evidence under Rule 104(a)") (footnote omitted); *U.S. v. Richards*, 204 F.3d 177, 202 (5th Cir. 2000) ("[t]he proponent of the evidence must prove the preliminary facts that bring the statement within Rule 801(d)(2)(D), by a preponderance of the evidence").

The Court must address the foundation issues on a statement-by-statement basis. *See, e.g., Zaken v. Boerer*, 964 F.2d 1319, 1323 (2nd Cir. 1991) ("[w]e examine therefore each statement testified to at Barr's deposition to determine whether the requisite relationship existed between the declarant and Boerer to make the statement admissible against Boerer in her individual capacity"); *U.S. v. Bonds*, 2009 U.S. Dist. LEXIS 16120 at *28 -*35 (N.D. Cal. Feb. 19, 2009). The Court can admit evidence of an out-of-court statement by Billings only if the Government has borne its burden of proof, with respect to that evidence, on all of the foundation requirements of Rule 801(d)(2)(C) or 801(d)(2)(D). Here, the Government has not met its burden of proof. Accordingly, the Court should exclude the evidence of Billings' out-of-court statements.

## IV.     The Billings' Hearsay Is Not Admissible Under Evid. R. 801(d)(2)(C).

### A.     The Government Must Establish, By A Preponderance Of Evidence, That Lawson Specifically Authorized Billings To Speak To Rummage About The Investigation Or Rummage's Choice Of Attorney.

A statement is not hearsay if it is "a statement by a person authorized by the party to make a statement concerning the subject … ." Rule 801(d)(2)(C). "Under Fed. R. Evid. 801(d)(2)(C), statements by a person with 'speaking authority' are authorized admissions … ." *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 262 F. Supp.2d 251, 260 (S.D. N.Y. 2003). The *Penguin* court went on to explain that:

> The relevant inquiry in Fed. R. Evid. 801(d)(2)(C) situations is whether the person making the statements had the authority to speak on a particular subject on behalf of the party the admission is to be used against. The courts' inquiries generally require that a person making the statement be an agent of the party-opponent against whom the admission is to be offered. … Therefore, in a Fed. R. Evid. 801(d)(2)(C) inquiry, the individual *must have had specific permission to speak on a subject … .*

*Id.* (citations omitted; emphasis added).  Rule 801(d)(2)(C) codifies the old common law rule that a mere showing that the declarant was the agent of the party is insufficient.  The proponent of the evidence must show that the declarant had "speaking authority" – that is, "specific permission to speak on a subject."

A case illustrating these principles in an analogous context is *U.S. v. Portsmouth Paving Corp.*, 694 F.2d 312 (4th Cir. 1982) -- the case the Government has cited in support of its current theories for admitting the Billings evidence.  There, the Government had brought charges of conspiracy to allocate contracts and bid rigging in violation of Section 1 of the Sherman Act.  A witness at trial, Remington, testified that he had called the office of defendant Saunders to get information about a particular contract.  Remington spoke with Saunder's secretary, who said he was not in.  Remington asked the secretary if she would speak with Saunders on a radio telephone and call Remington back.  A few minutes later, the secretary did call back and told Remington that "Mr. Saunders said that the air is clear in Chesapeake."  *Id.* at 321.

The *Portsmouth Paving* court held that the secretary's statement was *not admissible* under Rule 801(d)(2)(C):

> Clause (C) provides that a statement offered against a party is not hearsay if it is "a statement by a person authorized by him to make a statement concerning the subject."  This provision states the "orthodox rule," and demands as a prerequisite to admissibility a showing based on evidence independent of the alleged hearsay that the declarant is an agent of the party with authority to speak on the subject.  Ordinarily, under this rule, an employee's admissions damaging to his employer would be inadmissible on the grounds that the employee was not authorized to make damaging admissions.  Likewise, in the case at bar, while there is independent evidence of the agency status of the one with whom Remington spoke, *there is no evidence, beyond that implicit in the statement sought to be admitted, that she was authorized by Saunders to make the damaging admission about the "air ... in Chesapeake."*

*Id.* (citations omitted; emphasis added).[5]

Thus, to admit any Billings statement under Rule 801(d)(2)(C), the Government must prove by a preponderance of the evidence that Lawson gave specific authority to make the statement on that subject. As *Portsmouth Paving* teaches, the mere fact that Billings was employed as an engineer by ATS Construction – or that he may have spoken with Lawson -- does not establish that he had "speaking authority" from Lawson to make statements to Rummage about the Government investigation or Rummage's choice of attorney  Moreover, the Government must prove the essential foundation facts through acts or statements of Lawson, the alleged principal – the evidence of a Billings statement itself is insufficient as a matter of law to permit admission of the statement pursuant to Rule 801(d)(2)(C). *U.S. v. Pelullo*, 964 F.2d 193, 200 n.4 (3rd Cir. 1992) (Rule 801(d)(2)(C) "requires independent proof of the existence of an agency relationship and its scope").

### B.    The Government Has Not Met Its Burden Of Proof.

There is simply no evidence from Lawson that he ever gave specific "speaking authority" to Billings to make statements to Rummage about the Government investigation or Rummage's choice of an attorney. The Government points to two statements by Lawson (Motion for Partial

---

[5] The *Portsmouth Paving* court went on to hold that, although the secretary's statement was inadmissible under Rule 801(d)(2)(C), it was admissible under Rule 801(d)(2)(D) because it is "common knowledge" that "a businessman's secretary is an agent of the businessman for purposes of relaying messages to and from the businessman… ." *Id.* at 322. As addressed in Section V of this Memorandum, this (d)(2)(D) holding provides no support to the Government's position here. It is certainly not "common knowledge" that a licensed civil engineer's duties include conversations with a third party about government investigations or recommendations of attorneys to represent the third party. There is no evidence whatever – much less a preponderance of evidence -- that any statements by Billings on those subjects "concern[ed] matters within the scope of [his] agency or employment … ." Therefore, Billings' out-of-court statements on those subjects are also not admissible under Rule 801(d)(2)(D).

Reconsideration at 8), but they are insufficient, individually or taken together, to meet the Government's burden of proof.

In their conversation on March 12, Lawson said to Rummage: "… but what if, uh, Brian called you and get you to meet with Jon Woodall, do you want to do that?" (Def. Ex. 12(D) at 9.) Rummage did not answer Lawson's question. There is no evidence that Lawson ever gave "speaking authority" to Billings on that issue. Furthermore, Lawson's statement relates, at most, to setting up a meeting with Jon Woodall. The Court cannot speculate from this single fragment that Lawson later authorized Billings to speak for him with respect to *other* matters. And, of course, Lawson's statement on March 12 cannot be evidence that Lawson gave speaking authority to Billings on any subject *before* March 12.

Even weaker is the Government's reliance on Lawson's statement in his evening conversation with Rummage on the evening of March 12 that: "… if I need to send, uh, James or somebody to see ya, I will. You just have to let me, him, or Brian know." (Def. Ex. 12(H) at 7.) Here, Lawson is asking *Rummage* to relay information *to Lawson* through Billings (or through James York or directly to Lawson himself). Any argument by the Government that this statement proves that Lawson gave Billings specific speaking authority to communicate information *to Rummage* on any subject is based on nothing but rank speculation.

There is no evidence of the substance of any communications between Lawson and Billings during the critical March 2008 time period. The only evidence is telephone records which reflect only that there were a number of telephone calls between Lawson and Billings. However, because Billings worked as an engineer for ATS Construction, there were legitimate business reasons for Lawson and Billings to talk. The Government cannot properly ask the Court to find that the Rule 801(d)(2)(C) foundation facts are proven by a preponderance of

evidence by speculating about the content of the telephone calls. *See U.S. v. Warren*, 306 Fed. Appx. 682, 686 (2nd Cir. 2009) (no *Brady* violation in failing to turn over a taped telephone conversation: "That the co-defendant would have been discussing plans to give false testimony with his parents is pure speculation").

The Government has done nothing to prove specific speaking authority with respect to *any* of the evidence relating to Billings' statements. The Government's slapdash arguments fail on their own terms. Furthermore, and as shown below, when the facts are addressed with respect to the specific Billings/Rummage conversations and meetings – which the Government has steadfastly refused to do – there are additional reasons why the evidence is inadmissible under Rule 801(d)(2)(C).

### 1.    The Mt. Sterling Meeting.

As this Court found, just before the *Enright* hearing Rummage "remembered" a meeting with Billings in Mount Sterling sometime in January or February 2008, although he had never mentioned any such meeting in numerous earlier statements to law enforcement officials and the grand jury. (Doc. 511 at 12.) No evidence of this meeting is admissible against Lawson under Rule 801(d)(2)(C), because there is simply a void of evidence that Lawson gave any speaking authority to Billings with respect to this meeting. The Government has not even tried to prove otherwise.

The Court has found that Rummage's credibility is severely impaired, and consequently that his uncorroborated testimony does not establish facts under Evid. R. 104(a). (Doc. 511 at 12-14.) Here, Rummage's testimony about the alleged Mt. Sterling meeting is entirely uncorroborated – and Rummage's testimony on this point is further undermined by the fact that

he failed to mention the alleged meeting during at least ten meetings with law enforcement officials (Rummage, IV-26)[6] and did not "remember" it until shortly before the *Enright* hearing. (Doc. 511 at 12.)[7]  The Court should find that the fact of the Mt. Sterling meeting has not been proved by a preponderance of the evidence.  For these reasons alone, all evidence of the alleged meeting is plainly not admissible against Lawson.

Furthermore, even based on Rummage's testimony about the alleged meeting, the *only* evidence that Lawson authorized Billings to speak for him at the meeting would be testimony about what *Billings* allegedly said and did at the alleged meeting.  For this reason as well, the Government has failed to meet its burden of proving the foundation facts under the express terms of Rule 801(d)(2):  "The contents of the statement … are not alone sufficient to establish the declarant's authority under subdivision (C) … ."  No evidence relating to the alleged statements by Billings at the alleged Mt. Sterling meeting is admissible against Lawson.

### 2.    Bllings/Rummage March 7 Meeting.

The Government contends that Billings gave Rummage notes in this meeting, including a note stating that "Some rooms have ears."  (Doc. 511-2, para. 25.)    No such evidence is admissible against Lawson.  First, it is based solely on the uncorroborated testimony of Rummage, which the Court has found not to be credible.  Therefore, Rummage's testimony

---

[6] Citations to the *Enright* hearing transcripts (Docs. 480, 483, 484, 485, 486, 487) include the name of the witness, the transcript number (numbered I through IV in chronological order) and the page number.  Citations to the *Enright* hearing exhibits are in the form "Gov. Ex. __" and "Def. Ex. ___."

[7] The Defendants' are seeking to exclude Rummage's testimony about Billings' alleged hearsay statements at this meeting; they are not, however, asking the Court to exclude reference at trial to the fact that Rummage falsely created this story about the Mt. Sterling meeting right before the *Enright* hearing to fit with the Government's theory of its case.  That remains admissible, fertile ground for impeachment of Rummage and the Government.

alone is not sufficient to lay any foundation for admission of the evidence.  Second, there is no independent evidence whatever that Lawson gave Billings speaking authority to write notes to Rummage on that subject.  Billings' authority could not be established based only on Rummage's testimony about the meeting even if Rummage's testimony were corroborated.  Rule 801(d)(2).

### 3.    Billings/Rummage March 13 Meeting And Related Telephone Calls.

On March 13, 2008, there were two recorded telephone conversations between Billings and Rummage to set up a meeting.  They then met in Morehead, and that meeting was also recorded.  The Government contends that Billings passed notes to Rummage at the meeting, saying (a) "you haven't done anything wrong," (b) "Leonard needs to know what is going on," and (c) "do you have an attorney yet?"  (Doc. 511-2 , para. 27.)   The transcript of the meeting (Def. Ex. 12(K)) shows that the conversation was entirely about business.

Rummage's testimony about Billings passing notes on March 13, as on March 7, are based on nothing but Rummage's uncorroborated testimony, and is therefore not credible.  And there is no independent evidence that Lawson gave speaking authority to Billings to pass any notes to Rummage or to make statements in the notes as claimed in Rummage's uncorroborated testimony.  Rule 801(d)(2) demands independent evidence of such authority, and it is entirely absent here.  Therefore, no testimony about the alleged notes passed by Billings is admissible against Lawson.

Otherwise, the March 13 telephone conversations and meeting – which deal with normal business issues – are inadmissible because they are irrelevant.  Even if they had some marginal

relevancy – and they do not – the Court should exclude the evidence under Evid. R. 403 because it is prejudicial and confusing to the jury.

### 4.    Billings/Rummage March 18 Telephone Call.

Rummage called Billings three times on the morning of March 18.  (Gov. Ex. 45 at 45.) Within minutes, Billings called Rummage back (*id.*), and their conversation was recorded.  (Def. Ex. 12(M).)   Rummage told Billings that Rummage had given Lawson engineer's estimates before the bids.  Billings immediately denied that he had ever seen or used any such bids.

Nothing in the March 18 conversation is admissible under Rule 801(d)(2)(C).  There is no independent evidence from Lawson – and, in this instance, not even evidence from Billings in his conversation with Rummage – that Lawson ever authorized Billings to speak on his behalf in this telephone call.  And this is not surprising, in light of the fact that Rummage initiated the conversation and raised the issue of the engineer's estimates.

### 5.    Billings/Rummage March 19 Meeting And Related Telephone Calls.

On March 19, Rummage and Billings had two telephone calls to set up a meeting.  They met at a McDonald's restaurant. Rummage recorded the meeting.  (Gov. Ex. 92-B.)   Rummage testified that Billings passed three notes saying:  (a) "do I have an attorney yet," (b) "once I got an attorney, I need to let him know so the attorneys can talk," and (c) "Do you have anything big you need to talk about?"  (Rummage, II-8-9.)  Otherwise, the conversation dealt with normal business matters.

This evidence is not admissible against Lawson for multiple reasons.  First, Rummage's testimony about the content of the notes is uncorroborated and therefore not credible, as the

Court has found.  (Doc. 511 at 12-14.)  Second – as always – there is no independent evidence that Lawson gave specific authority to make any of these statements on his behalf.  The only evidence to show the required foundation facts under Rule 801(d)(2)(C) is Rummage's testimony of what the notes allegedly said.  As noted above, Rule 801(d)(2) expressly provides that the statements of the purported agent alone are insufficient to establish admissibility under Rule 801(d)(2)(C).

Third, the other evidence refutes the Government's contention that Billings was acting at the direction of Lawson in the March 18 meeting.  Rummage and Billings had worked together for years.  They were friends and former co-workers.  They "continued to have phone calls and meetings of all sorts to talk about personal issues, family issues, [and] professional issues." (Rummage, III-21-25.)  Given the absence of any independent evidence of authorization by Lawson, the only reasonable conclusion is that Billings was speaking to Rummage as a friend.

The Government has not met its burden of proving by a preponderance of the evidence that Lawson gave specific speaking authority to Billings with respect to the notes allegedly passed during the March 18 meeting.  Therefore, no evidence about those notes is admissible against Lawson under Rule 801(d)(2)(C).

6.    **Billings/Rummage March 20 Meeting And Related Telephone Call.**

On March 20, Rummage called Billings at the request and direction of the FBI. (Rummage, IV-32-33.)  Rummage asked for a meeting.  (Def. Ex. 12(Q) at 1.)  They agreed to meet that morning at the McDonald's in Newtown.  (*Id.*)   Apart from the usual absence of independent evidence that Lawson gave speaking authority to Billings with respect to this conversation, the Government's contention under Rule 801(d)(2)(C) is refuted by the fact that

*Rummage called Billings* to request the meeting.  It would be impossible for Lawson to direct Billings about a telephone conversation that neither of them knew Rummage was going to make. Nothing in the March 20 telephone call is admissible against Lawson.

Rummage and Billings then met on March 20 at the McDonalds, and Rummage recorded the meeting.  (Def. Ex. 12(R).)  Rummage used the meeting to ask Billings whether Lawson would pay for an attorney for Rummage.  (*Id.* at 2, 4, 10.)   Billings says only that he will talk to Lawson about Rummage's request.  (*Id.* at 4.)

Rummage testified that Billings passed three notes to him:  (a) "asking me if I had talked to an attorney yet," (b) "telling me that I can start a defense fund," and (c) showing Rummage the name of David Guarnieri.  (Rummage, II-11.)  The Government has wholly failed to provide any independent evidence that Lawson gave specific authority to Billings to speak to Rummage on these issues.  Here, the Government cannot even urge the Court to speculate about such authority based on the mere fact of telephone conversations between Lawson and Billings – because there were no such conversations on March 19 and 20.  Furthermore, Rummage did not raise with Billings the issue of paying for his attorney until the March 20 meeting, so there was no way Lawson could have directed Billings to speak on that issue.

With respect to David Guarnieri, there is no evidence that Lawson and Billings ever discussed Guarnieri, much less that Lawson authorized Billings to make that recommendation to Rummage.  Mr. Woodall had given Mr. Guarnieri's name to Billings.  (Woodall Aff., para. 5.)

The evidence falls far short of proving by a preponderance of the evidence that Lawson gave authority to Billings to speak in the March 19 telephone call or the March 20 meeting. None of that evidence is admissible against Lawson.

### 7.    Billings/Rummage March 24 Telephone Conversations.

Rummage and Billings had two telephone conversations on March 24, both initiated by Rummage.  (Def. Exs. 12(T) and 12(U).)  In the first call, Rummage asked:  "Okay.  Uh, I mean do … do you have somethin' that might help me out or … or … ?"  Billings answered, "Yeah, yeah I do."  (Def. Ex. 12(T) at 1.)  Rummage then asks if they can meet at the McDonald's on Newtown at 2:00 that afternoon.  (*Id.*)  Later that day, Rummage called Billings to say he could not meet at 2:00.  They agree to meet at about 10:00 the next morning.  In the course of the conversation,  there is this exchange:

| | |
|---|---|
| Rummage: | … And, have you got somethin', okay, you got somethin' for me though man that's the main thing I want to know … know … it will calm me down that way? |
| Billings: | Absolutely … |

(Def. Ex. 12(U) at 1.)

The Government cannot rely on Rule 801(d)(2)(C) to avoid the hearsay rule.  The Government has no independent evidence that Lawson specifically authorized Billings to make these statements.  And Lawson could hardly have done so – in both March 24 conversations, *Rummage called Billings.*  (Rummage, II-15.)  There was no way that Lawson or Billings could have known that the calls were coming, and no way that Lawson could have instructed Billings to make the statements he made during the calls.  The evidence of the March 24 telephone conversations is not admissible against Lawson.

### 8.    Billings/Rummage March 25 Meeting.

Rummage and Billings met at a hotel parking lot on March 25.  Rummage and the FBI videotaped the meeting.  (Gov. Ex. 98-B.)

Billings told Rummage that Lawson would not pay for his attorney: "Uh, Leonard told me to tell you specifically that as far as his attorney's concerned he can't give you any money." (Def. Ex. 12(X) at 3.)  "Uh, you know when you said, he's not givin' you any money and he's … he's not gonna start now."  (*Id*.)  Billings showed Rummage a number of messages on his cell phone.  In one message, Rummage claims that Billings gave him Guarnieri's name again. (Rummage, II-17.)

Rummage testified that Billings showed him a message saying "Don't talk out loud," and "If you agree to switch attorneys, nod your head."  (Rummage, II-18.)  Rummage then testified that:  "It goes on to tell me, if I switch attorneys, costs will be taken care of."  (*Id.*)  None of this is admissible against Lawson.  As always, there is no independent evidence that Billings had been given specific speaking authority by Lawson.  "The contents of [Billings'] statement[s] …are not alone sufficient to establish [Billings'] authority under subdivision (C) … ."  Rule 801(d)(2).  In its opinion after the *Enright* hearing, the Court stated that, although Billings' actions on the March 25 videotape "are indeed fishy, the Court cannot find, by a preponderance of the evidence, that this evidence is sufficient to show an agreement to join any conspiracy." (Doc. 511 at 20.)  That point applies with even more force here, because Rule 801(d)(2)(C) requires proof of specific authority *based on evidence of Lawson's acts or statements* – evidence which is totally lacking with respect to Rummage's testimony about the notes.  The absence of independent evidence of specific authority to speak is sufficient to render the evidence inadmissible.

In addition, Rummage's testimony is the sole evidence of the contents of these notes.  As the Court has found, "… Rummages' credibility is severely impaired," (Doc. 511 at 12), and his testimony should be credited only when it is corroborated by other evidence.  (*Id.* at 14.)  There

is no corroboration here except for Guarnieri's name, so the Court cannot find that the statements were even made – much less that Billings made them with Lawson's specific authority to speak on his behalf.

The fact that the March 25 meeting is on videotape presents an additional issue of authorization. There is no evidence at all that Lawson specifically authorized Billings to show Rummage text messages on his telephone, or do anything else that this Court referred to as "fishy." (Doc. 511 at 20.) Thus, in determining admissibility, the Court must separate the *substance* of the communications from Billings' *method* of communicating. Even if the substance were admissible – and it is not, for all the reasons set forth above – the videotape should be excluded, because the Government has done nothing to prove that Lawson specifically authorized Billings to act as he did in the March 25 meeting. The Court should also exclude the videotape under Evid. R. 403. The visual aspects of the tape are highly prejudicial, and far outweigh any probative value – especially in the absence of *any* evidence that Lawson directed or authorized Billings to behave as he did in the meeting.

## V.    The Billings Hearsay Is Not Admissible Under Evid. R. 801(d)(2)(D).

### A.    The Government Must Establish, By A Preponderance Of Evidence, That Billings' Statements Were Within The Scope Of His Employment, Or That Lawson Specifically Authorized Billings To Speak.

Rule 801(d)(2)(D) provides that an out-of-court statement is not hearsay if it is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship … ." In *U.S. v. Wiedyk*, 71 F.3d 602 (6th Cir. 1995), the court held that evidence of a corporate employee (here, a union welfare fund) was improperly admitted under Rule 801(d)(2)(D) against a high-ranking employee of the corporate entity. The court noted that:

Agency can be established in one of two ways.

> First, [the declarant] can be shown to have been an agent for the [corporate entity] and defendant's control over the [corporate entity] is so extensive as to have the [corporate entity's] role as principal imputed to defendant.
>
> * * *
>
> An agency relationship would also be proven if factors which normally make up an agency relationship are present between Brown and defendant, regardless of corporate structure.

*Id.* at 606.  The court also stated that agency is to be determined by "common law agency doctrine." *Id.* at 605.

Thus, to prevail on its new Rule 801(d)(2)(D) theory, the Government must prove by a preponderance of the evidence *either* that Billings' out-of-court declarations "concern[ed] a matter within the scope of [his] employment," *or* that Billings was authorized by Lawson to make the declarations, in accordance with normal rules of agency.

**B.    There Is No Evidence That Statements Relating To A Government Investigation Or Rummage's Choice Of Attorney Were Within The Scope Of Billings' Employment.**

The mere fact that Billings was an employee of ATS Construction in 2008 doesn't establish that his out-of-court declarations are admissible under Rule 801(d)(2)(D).  Rather, the Government must prove that the scope of Billings' employment included the communications with Rummage that the Government seeks to admit against Lawson.  Moreover, as a well-established tenet of agency law, proof of agency must be based on the acts and statements of the principal.    The Government cannot rely solely on the acts or statements of Billings. Restatement (Third), *Agency*, § 3.01 (2006); Restatement (Second), *Agency*, §26 (1958).

"[I]t is necessary, we repeat, to show, to support admissibility, that the content of the declarant's statement concerned a matter within the scope of his agency."  *Hill v. Spiegel, Inc.*,

708 F.2d 233, 237 (6th Cir. 1983); *Mitroff v. Xomox Corp.,* 797 F.2d 271, 276 (6th Cir. 1986) (under Rule 801(d)(2)(D), "a proper foundation must be made for such a statement to show it was within the scope of his agency or employment").[8]  In the absence of proof of the scope of employment, evidence of an employee's out-of-court statement is inadmissible hearsay.  *Hill v. Spiegel, Inc.,* 708 F.2d 233, 237 (6th Cir. 1983).[9]

In 2008, Billings was employed by ATS Construction as a licensed civil engineer.  The Government has tendered no proof – much less proof from Billings' employer -- that the scope of his employment included dealing with third parties with respect to Government investigations.  Unlike in *U.S. v. Portsmouth Paving Corp.*, 694 F.2d 312, 322 (4th Cir. 1982), the only authority cited by the Government in support of its Rule 801(d)(2)(D) theory, this Court cannot find that it is "common knowledge" that such communications fall within the scope of employment of a licensed civil engineer.  Because the Government has presented no evidence on this essential, scope of employment element of Rule 801(d)(2)(D), it has necessarily failed to meet its burden of proving by a preponderance of the evidence that any of Billings' statements are admissible under that Rule.  *See Litton Sys., Inc. v. AT&T Co.*, 700 F.2d 785, 817 (2nd Cir. 1983) (hearsay properly excluded where "AT&T made no attempt at trial to lay the necessary foundation for the

---

[8] *See also, e.g., Adams v. U.S.*, 2009 U.S. Dist. LEXIS 54895 at *11 (D. Idaho June 28, 2009) (proof that an email was sent by the intervenor's employee "is not enough to establish that [the employee] was speaking within the scope of his employment so as to render his statement non-hearsay under Rule 801(d)(2)(D)").

[9] *See also, e.g., Hughey v. Home Depot USA, Inc.*, 2009 U.S. Dist. LEXIS 63737 at *3-*4 (E.D. Pa. July 23, 2009) (employee statement excluded where plaintiff failed to prove the statement was within the scope of the employment); *Adams* at *11-*12 (excluding email written by employee).

admission of the notes under 801(d)(2)(D) or any other rule, and simply argues here that the terms of 801(d)(2)(D) were satisfied").[10]

In its designation of out-of-court statements (Doc. 511-2), the Government asserted that "[i]n every instance, there are multiple bases for admissibility" (*Id.* at 1) – but the Government never claimed admissibility under Rules 801(d)(2)(C) or (D) until its motion for partial reconsideration. There is a reason for this. The Government has not carried its burden of proving, by a preponderance of the evidence, the essential foundation facts under those Rules and, accordingly, the Court should reject the Government's belated arguments for admissibility.

## VI.    The Portions Of The Recorded Billings-Rummage Conversations That Relate Only To Ongoing Construction Work Are Also Inadmissible.

The recorded conversations between Billings and Rummage that the Government seeks to admit contain substantial portions that concern only ongoing construction work and have nothing to do with any government investigation of Rummage, his legal representation, or his choice of attorneys. *See*, *e.g.*, Def. Ex12(K) (March 13 meeting); Def. Ex. 12(P) (March 19 meeting); Def. Ex. 12(R) (March 20 meeting). It is not clear that the Government would seek to admit these construction work-related portions alone if the other, investigation-related portions are ruled inadmissible against Lawson and Nighbert (as they should be, for the reasons stated above). In any event, the construction work-related portions are also inadmissible.

First, although they arguably do concern matters within the scope of Billings' employment, the portions of the Billings-Rummage conversations that relate solely to ongoing construction work are not relevant to any issue in the case against Lawson and Nighbert, and also

---

[10] The Billings statements cannot be admitted under the second prong of the *Wiedyk* analysis – proof that Lawson authorized Billings to speak for him – for all of the reasons set forth in Section IV of this Memorandum.

would be confusing for the jury. *See*, *e.g.*, *U.S. v. Newsom*, 452 F.3d 593, 603-04 (6th Cir. 2006) (trial court erroneously admitted evidence regarding the defendants' tattoos because it was "simply not probative regarding the sole issue in this case"); *U.S. v. Dixon*, 413 F.3d 540, 546-47 (6th Cir. 2005).

Second, admission of the construction work-related portions of the Billings-Rummage recordings under Rule 801(d)(2)(D) - *i.e.*, as relating to matters within the scope of Billings' employment - would not make those portions admissible *against Nighbert*, as Nighbert was not Billings' employer either directly or indirectly. *See*, *e.g.*, *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 335 (C.D. Cal. 2004) ("'Foreman is clearly an agent or servant of Wayne-Dalton testifying to a matter within his employment and responsibility. The statement therefore may be admitted against Wayne-Dalton, *although it cannot be admitted against any other party*'") (Court's emphasis) (quoting *Western Wholesale Supply, Inc. v. Holladay*, 2000 U.S. Dist. LEXIS 22012 (D. Idaho 2000)). Consequently, limiting instructions on this issue would be required. This added burden on the jury would be entirely unjustified given the lack of probative value of the evidence on any issue relevant to Lawson.[11]

---

[11] Admission of *investigation-related* parts of the Billings-Rummage conversations under either Rule 801(d)(2)(C) or Rule 801(d)(2)(D) would create far more serious difficulties in this respect. Neither admissibility theory could possibly make such statements admissible against Nighbert, which in turn would create the same serious problems concerning compartmentalization that the Court previously found in granting severance of the charges against Billings:

> Judge Reeves correctly recognized that severance was appropriate due to a serious risk that Nighbert would be substantially prejudiced by a joint trial. The same rationale applies in the current context. Although the United States has reformulated the charges to avoid Judge Reeves' severance order, the risk remains the same. Due to the large number of statements and the complexity of the case, there is a substantial risk that the jury would be unable to compartmentalize the evidence as between the defendants even if limiting instructions were given.

Doc. 509 at 6; *see also Carter v. District of Columbia*, 795 F.2d 116, 126 (D.C. Cir. 1986) (In suit claiming excessive force during an arrest, it was error to admit evidence of complaints filed against members of the police force who were not defendants in the case; although the Trial

**VII.    Conclusion.**

For the reasons stated in this Memorandum, the Court should consider each of Billings' statements individually, and exclude each of them from evidence *in limine*.

Respectfully submitted,

/s/Larry A. Mackey
Larry A. Mackey
Jason R. Barclay
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana  46204
Telephone:  (317) 231-7236
Facsimile: (317) 231-7433
E-mail: lmackey@btlaw.com

/s/J. Guthrie True
J. Guthrie True
JOHNSON TRUE GUARNIERI
326 West Main Street
Frankfort, Kentucky 40601
Telephone: (502) 875-6000
E-mail: gtrue@jtgattorneys.com

Attorneys for Leonard Lawson

/s/Howard O. Mann
Howard O. Mann
LAW OFFICES OF HOWARD O. MANN
P.O. Drawer 1344
Corbin, Kentucky 40702
Telephone: (606) 528-0616
E-mail: hmannlaw@bellsouth.net

Attorney for Charles William (Bill) Nighbert

---

Court "gave adequate, if not model, instructions as to the limited purpose for which the evidence should be considered" those instructions were insufficient to protect against the danger of unfair prejudice).  This issue should not arise, however, because the investigation-related portions of the Billings-Rummage conversations are not admissible against Lawson under either Rule 801(d)(2)(C) or Rule 801 (d)(2)(D) for the reasons discussed in Sections II - V, *supra*.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served this 1st day of December, 2009, by electronic filing service to the following:

Kenneth Taylor
Kevin Dicken
Assistant United States Attorney
United States Attorney's Office
110 West Vine Street, Suite 400
Lexington, KY  40507

J. Kent Wicker
Steven S. Reed
Reed Wicker PLLC
321 West Main Street, Suite 2100
Louisville, KY 40202

/s/Larry A. Mackey
Larry A. Mackey

INDS02 MRR 1082181v1